S. HAMILTON v. R. V. HIGHLANDS.

(Filed 3 April, 1907).

1. **Contracts — Character — Question of Law—Lease—Conditional Sale.**—The purpose determines the real character of a contract as a question of law, and a written contract, called a lease by the parties, is construed as a conditional sale which provides: That the defendant agrees to "hire to the use" of plaintiff certain instruments at a fixed rental in specified instalments, with plaintiff's right to the possession without previous notice or demand in the event of defendant's default in payment of the instalments, called rent, when due, and in such event the amount of "rental" previously paid to be retained by plaintiff as damages for the breach of the contract; upon complying with the terms of the contract the defendant to have the right of purchase at a price equalling the sum total of the stipulated rental price, the payments theretofore made being deducted.

2. **Same—Redemption.**—Under a contract purporting to be a lease, but construed as a conditional sale, the defendant may redeem by paying the amount due, with interest and costs; or, in default, the Court will order the property sold and the proceeds of sale applied to the payment of the debt, interest and costs, and the surplus, if any, paid to defendant.

3. **Same—Election—Time.**—The defendant may elect to regard the contract as a lease and to terminate it, or to avail himself of the provisions in the clause of forfeiture by surrendering the property at any time before the full time for payment has expired, and he may be bound by such election thereafter; but he is not bound by a motion made during the trial to that effect when it was disallowed or by an offer when it was not accepted.

4. **Pleadings—Admitted Facts—Issues—Verdict Unconflicting.**—Facts admitted by the pleadings are not issuable, and, when the verdict of the jury finds there has been no damage to the property on account of detention without otherwise varying the admitted facts, such finding does not stand in the way of the relief to be administered herein and should be considered with the admitted facts.

CIVIL ACTION, tried before *Councill, J.,* and a jury, at the January Term, 1907, of the Superior Court of MOORE County.

The plaintiff alleges in his complaint that on 5 June, 1901, he entered into a written contract with the defendant, marked "Exhibit A," which is called a lease, and by which the defendant agreed to "hire to the use" of the plaintiff for nineteen months a piano, with stool and scarf, and to pay, as security for the performance of the contract, $50 down and, as rent, $15 on the 15th day of each month, except the last, for which it was $10, the payments to begin with 15 July, 1901; and, further, to return the piano at the end of the time in as good condition as reasonable wear and use will permit. If the defendant failed to pay any instalment of rent, the same to bear interest from maturity; and upon said failure, or upon the removal of the property from the defendant's residence, the security money to be retained as damages for the breach of the contract, and the plaintiff, in addition, to have the right to take possession of the piano without demand or notice. It was further agreed that, if the defendant paid the instalments of rent as they fell due, he should have the right to purchase the piano for $330 (the total amount of the security money and instalments), in which case all sums paid as security or as rent should be deducted from that amount. A similar contract was made, on 15 July, 1901, in regard to an angelus, and described as "Exhibit B," the security money being the same and the instalments of rent $10 per month for twenty-two months from 15 August, 1901, and $5 for the twenty-third month, making $275 in all. The plaintiff further alleges that he "leased and delivered, conditionally," to the defendant the said instruments, and the latter promised to pay for the same $605 in security money and instalments, as aforesaid, and that the piano and angelus were reasonably worth said amounts. That the contracts as contained in Exhibits A and B were taken as security for the payment of the several

amounts agreed to be paid by the defendant, the plaintiff retaining the title "until the entire purchase-price should be paid," with the right to take possession of the property in case of default. That defendant has paid in security money and instalments on the piano $155 and on the angelus $140, and that there is now due "on the purchase-price of the said instruments the sum of $346.17." The plaintiff then demands judgment, first, for $346.17 and interest; second, for the possession of the property, and, third, for a sale of the same, the proceeds to be applied to the payment of the debt due to him and the costs and expense, and the surplus to be paid to the defendant. The defendant answered and admitted all of the material allegations of the complaint except as to the balance due on the contracts. He then prayed that he be permitted to deliver the property to the plaintiff and be discharged from further liability, forfeiting, of course, the amount he had paid. Before the jury was impaneled the defendant moved for judgment as prayed in his answer, and the Court reserved decision on the motion until after verdict, when it was overruled, though the Court held, at the time the motion was made, that the contracts as contained in Exhibits A and B were leases and not conditional sales or mortgages. The jury found, in response to the first three issues submitted, that the contracts had been executed and the amounts paid thereon as stated in the complaint; to the fourth and sixth, that the piano, at the time of seizure by the sheriff, was worth $275 and the angelus $200; to the fifth and seventh, that there had been no damage to the property by deterioration or detention, and to the eighth issue that the plaintiff is the owner and entitled to the possession of the property. The evidence in the case was not different in substance from the allegations of the complaint, except one witness testified that the piano at the date of

the contracts was worth $375 and the angelus, $275, or a total of $650, and that at the time of the seizure they were worth the amounts stated in the verdict. After the verdict was returned, and his motion that he be allowed to surrender the property and be discharged had been overruled, the defendant moved that judgment be rendered according to the prayer of the complaint, treating the contracts as conditional sales or mortgages. The Court held that it was too late for the defendant to make that election and overruled the motion, holding again that the contracts were leases. It was thereupon adjudged that the plaintiff recover of the defendant the sum of $1,299.37, of which $1,135 (the total of all overdue instalments) is principal and $164.37 is interest, with interest on the principal until paid, and, further, that he recover the possession of the property (the piano and angelus); and if, for any reason, it cannot be had, then the sum of $475, the assessed value of the property, with interest on the same, and also the costs.

At the time of bringing this action the plaintiff caused the piano and angelus to be seized under claim and delivery proceedings. The defendant replevied and now has possession of the property.

From the judgment the defendant, having duly excepted to the rulings of the Court, appealed.

*U. L. Spence* and *John W. Hinsdale, Jr.,* for plaintiff.
*R. L. Burns* for defendant.

WALKER, J., after stating the case: This case has some peculiar features. The plaintiff has recovered a sum of money greatly in excess of the value of the property involved, and, in the second place, the judgment is directly contrary to his own theory of his rights, as stated in the complaint. A demand so extortionate as the one he now

makes should not receive any favor from the Court, nor should the judgment recognizing and enforcing it be permitted to stand for one moment, unless the law most clearly sanctions it and imperatively requires that it should be upheld. We are fully convinced that it does not, for it looks to the real intention of the parties and construes their contract accordingly, without much, if any, regard to the name by which it is designated or to the particular language employed. It seeks to do equity and avoid oppression. Its motive is justice and not generosity. It follows that the courts, in determining whether or not a contract is one of bailment or one of sale, with an attempt to retain a lien for the price, in effect a mortgage, do not consider what description the parties have given to it, but what is its essential character. It was a mere subterfuge to call this transaction a lease, and the application of that term to it in the written agreement of the parties does not in law change its real meaning. A contract like the one upon which this suit was brought has been held by a very large majority of the courts of this country to be, in substance, a conditional sale, although in the form of a lease (and so called) or of a bailment for use, with an option to purchase. 6 Am. and Eng. Enc. Law (2 Ed.), 447, and note 6. Special reference is made to the following cases as being directly in point: *Baldwin v. Wagner,* 33 W. Va., 293; *Kimball v. Post,* 44 Wis., 471; *Murch v. Wright,* 46 Ill., 487; *Ott v. Sweatman,* 166 Pa. St., 217. This Court has steadily adhered to this just and equitable construction of such contracts. *Puffer v. Lucas,* 112 N. C., 377; *Crinkley v. Egerton,* 113 N. C., 444; *Clark v. Hill,* 117 N. C., 11; *Barrington v. Skinner, ibid.,* 47; *Manufacturing Co. v. Gray,* 121 N. C., 168; *Thomas v. Cooksey,* 130 N. C., 148; *Wilcox v. Cherry,* 123 N. C., 79. In the case last cited, at pp. 82 and 83, it is said: "We are

satisfied from a bare inspection of the paper itself that it was intended to be a conditional sale, and was put in the form of a lease to avoid the registration laws, or possibly to work an unjust forfeiture, neither of which can meet our approval. Both are frauds in law. The common intent was evidently a sale of the machinery in such a way as to secure the purchase-money. This seems evident to us from the face of the instrument itself, even if we exclude all testimony. We cannot imagine that a business man of common sense would rent property upon exactly the same terms upon which he could buy it, and we do not find any rule of interpretation which requires us to place upon a contract a construction which would indicate that at least one of the contracting parties was mentally incapable of contracting." And in *Hervey v. Locomotive Works,* 93 U. S., 664, the principle is thus stated: "The transaction (is not) changed by the agreement assuming the form of a lease. In determining the real character of a contract, courts will always look to its purpose rather than to the name given to it by the parties." A similar contract was held in *Thomas v. Cooksey, supra,* to be a conditional sale, although it did not expressly confer any right to purchase. If the contract between the parties, as expressed in the writing, be substantially one of conditional sale, the fact that the purchase-money is denominated as "hire" or as "rent," and divided into sums payable at various periods throughout the term of credit, will not render the transaction one of bailment for hire, so as to subject it to the law of bailments instead of the law of conditional sales or mortgages. *Cottrell v. Bank,* 89 Ga., 508.

The contract described in the pleadings is substantially like the one which was construed in *Wilcox v. Cherry,* and we hold now, as was held then, that it was clearly intended to be a conditional sale. This being so, the case of *Puffer v. Lucas* is direct authority for holding that the defendant

has the right to redeem the property by paying the amount due, with interest and costs, and in default of such payment to have the property sold and the proceeds applied to the payment of the debt and interest thereon and the costs, and the surplus, if any, paid to him, thus treating the contract as, in equity, a mortgage. Whether it be considered as a contract of sale with a clause of forfeiture or defeasance, a mortgage or a conditional sale, the proper relief is that demanded by the plaintiff upon the allegations of his complaint, by which it is properly construed as giving the defendant the right to redeem.

But it is contended by the plaintiff's counsel that the defendant had the right to elect to treat the contract as a lease and to terminate it or to avail himself of the forfeiture at any time by surrendering the property and refusing to pay the instalments (*Puffer v. Baker,* 104 N. C., 148; *Puffer v. Lucas,* 112 N. C., 377); that he had elected to do so in this case and was bound by that election, so that he could not now ask to redeem. The answer to this contention is that the election had to be made before the full time for payment of the instalments had expired (*Puffer v. Baker, supra*), and it was not, in fact, made until after the expiration of that time, nor until the answer in this case was filed. Besides, the Court did not grant the motion by which the election is said to have been made, nor did the plaintiff accept the proposition contained therein, that the defendant be permitted to surrender the property and lose what he had paid and then be discharged from any further liability. On the contrary, the Court submitted issues which were framed upon a theory of liability quite different from that by which the defendant proposed to settle the case and which went far beyond it. It cannot fairly be argued that he should be estopped by his election to treat the contract as a lease, without considering the other branch of his offer, namely, that he

be released from further liability upon surrendering the property and giving up to the plaintiff what he had already paid. The two must be coupled and taken together. But neither the plaintiff nor the Court accepted his offer, and therefore there was no binding election. It would indeed be hard measure to hold him estopped by a rejected offer.

The verdict of the jury in its essential features is not unlike that in *Puffer v. Lucas* and the same relief should be awarded in this as was awarded in that case. There is this difference between the cases, which is in favor of the defendant, that in *Puffer v. Lucas* the plaintiff sued for the possession of the property, treating the contract as a lease, while in this case the plaintiff asks for a foreclosure, treating the contract as a mortgage. We are, therefore, giving him precisely the relief he has demanded and according to his own construction of the contract, as will appear from the allegations and prayer of his complaint.

We find, in considering this case and the authorities bearing upon it, that *Foreman v. Drake,* 98 N. C., 311, has been overruled, so far as it is in conflict with the cases we have cited. *Wilcox v. Cherry,* 123 N. C., 79; *Thomas v. Cooksey,* 130 N. C., 148. In connection with the citation of that case, it may be well to add that we do not mean to imply by what we have said that parties, when acting in good faith, cannot make a valid lease with an option reserved by the lessee to purchase. *Wilcox v. Cherry, supra.* The form of the contract must not, though, be used merely as a cloak or cover to conceal the real nature of the transaction, which will always be determined by the Court according to the intent of the parties, to be gathered from their language or from what they really meant.

The jury have found that there has been "no damage to the property by detention or deterioration"—that is, that there has been none for which the defendant is liable. Apart

from this finding, there is no material fact found by the jury which is not admitted in the pleadings. The admitted facts of a case are, of course, not issuable. The value of the property at the time of the seizure by the Sheriff, in the view we take of the case, becomes immaterial. The eighth issue embodied a question of law, or rather a conclusion of law, from the admitted facts. The verdict does not, therefore, stand in the way of the relief to be administered, but may be considered with the facts admitted.

. Our conclusion is that the property be sold by order of the Court below, and out of the proceeds there be paid the costs and expenses and the balance of the debt due by the defendant—that is, the purchase-money specified in the contracts ($605), less the payments thereon. The surplus will be paid to the defendant. If there is any deficiency, judgment will be entered against the defendant for it. *Puffer v. Lucas, supra.* Whatever damage the plaintiff may have suffered from the detention or deterioration of the property since the time to which the verdict relates, and for which the defendant is liable, may be recovered by him upon the bond given by the defendant. The plaintiff may have process issued to put him in possession of the property, if he desires it and thinks it will avail him anything, as he is entitled to the possession whether the contracts are conditional sales or mortgages, the term of credit having expired. *Moore v. Hurt,* 124 N. C., 27; *Hinson v. Smith,* 118 N. C., 503; *Kiser v. Blanton,* 123 N. C., 400. But whether he or the defendant has the possession, the property must be delivered, on demand, to the commissioner appointed by the Court to sell it.

Let the judgment of the Superior Court be modified so as to conform to this opinion. The plaintiff will pay the costs of this Court.

Error.