## In re TANSILL.

(District Court, W. D. South Carolina. March 21, 1922.)

1. **Bailment** ⟨⟩1—Agreement under which cotton linters were shipped to prospective purchaser held clear contract of bailment.

Where cotton linters were shipped to prospective purchaser on agreement that they should be stored in its warehouse and that it would submit offers of purchase which must be accepted by shipper before sale was consummated, *held* contract was clearly one of bailment.

2. **Bankruptcy** ⟨⟩140(3)—Trustee in bankruptcy cannot assert ownership of chattels under bailment in absence of statute.

In the absence of some statutory enactment, trustee in bankruptcy of bailee cannot assert ownership of chattels under bailment.

3. **Bankruptcy** ⟨⟩140(3)—Unrecorded agreement under which cotton linters were stored in warehouse of prospective purchaser held void as to trustee in bankruptcy of prospective purchaser (Civ. Code S. C. 1912, §§ 3542, 3740; Bankruptcy Act, §§ 47, 60, 67, 70 [U. S. Comp. St. §§ 9631, 9644, 9651, 9654]).

Where cotton linters were shipped to prospective purchaser under agreement that they should be stored in its warehouse and that it should submit offers of purchase which must be accepted by shipper before sale was consummated, which agreement was not recorded as required by Civ. Code S. C. 1912, § 3740, *held*, agreement was void as to trustee in bankruptcy of such prospective purchaser or bailee in view of section 3542, and Bankruptcy Act, §§ 47, 60, 67, 70 (U. S. Comp. St. §§ 9631, 9644, 9651, 9654).

4. **Sales** ⟨⟩55—Question as to whether title has passed and when is determined by local laws.

Whether transaction accomplishes the transfer of title and question of when title passes is determined by local laws.

**5. Fraudulent conveyances ⬥136—Creditors receiving benefit of act relating to recording of agreements reserving title to personalty need not be subsequent creditors (Civ. Code S. C. 1912, §§ 3542, 3740).**

Under Civ. Code S. C. 1912, § 3740, construed with section 3542, relating to the recording of agreements reserving title of vendor or bailor of personal property, it is not necessary that all creditors receiving benefit of act should be subsequent creditors.

In Bankruptcy. In the matter of H. A. Tansill, doing business as the Carolina Waste Company. On petition of the Woodruff Oil & Fertilizer Company to review an order of the referee disallowing claim of petitioner to the proceeds of the sale of certain bales of cotton linters. Order affirmed.

E. M. Blythe and Dean, Cothran & Wyche, all of Greenville, S. C., for petitioner.

B. F. Martin, of Greenville, S. C., for trustee respondent.

WATKINS, District Judge. This matter comes before me upon petition of Woodruff Oil & Fertilizer Company to review an order of the referee whereby the claim of petitioner to the proceeds of the sale of certain bales of linters in the hands of the trustee was disallowed.

Pursuant to a voluntary petition filed on June 3, 1921, H. A. Tansill, engaged in business at Greenville, S. C., under the style of Carolina Waste Company, was on June 4, 1921, adjudged a bankrupt. For some years prior to the adjudication the bankrupt had maintained a place of business, including a warehouse or warehouses, in the city of Greenville, S. C., and in the line of his business had engaged in the purchase and sale, among other articles, of cotton linters in bales produced by cotton oil mills. Pursuant to a verbal agreement, Woodruff Oil & Fertilizer Company, beginning on February 4, 1921, and extending to and including March 4, 1921, shipped Carolina Waste Company 279 bales of linters, of which about 130 were in possession of the waste company on the date of its adjudication as a bankrupt. By agreement of the oil mill and the trustee for the bankrupt estate, these linters were, by order of the referee, sold in September, 1921; the proceeds to be held pending the determination of the controversy as to ownership. Upon the hearing the referee denied the claim of petitioner and ordered the trustee to pay over the funds arising from the sale of the linters, and amounting to $1,077.12, ratably among all the creditors of the estate.

It appears from the testimony in the case that the linters were shipped to the waste company upon the agreement that they should be stored in its warehouse, and that it would submit to the oil company offers of purchase which must be accepted upon the part of the oil company before the sale was consummated. It was the custom of the waste company to procure offers from other parties before submitting its own bid; but the amount of these offers was not made known to the oil company, nor was the compensation of the waste company fixed by commission. It became, when a sale was consummated, a purchaser in its own right, so far as the oil company was concerned. The shipper paid all transportation charges, but no charges for storage. The linters were insured by the waste company in its own name, and it is to be assumed at its own expense. Subsequent to the storing of the linters with the waste company, it contracted various debts which are still outstanding, as will appear by reference to the schedules and claims filed with the referee.

[1] It will appear from the foregoing that the case is clearly one of bailment. Possession was delivered but title reserved in the shippers. In the case of Walter A. Wood Mowing & Reaping Machine Co. v. Vanstory, Trustee (C. C. A.) 171 F. 375, 22 Am. Bankr. Rep. 740, Judge Pritchard, speaking for the Circuit Court of Appeals of this Circuit, and quoting from American & English Encyclopedia of Law (2d Ed.) vol. 3, p. 733, said: " 'Bailment is the delivery of goods for some purpose, upon a contract, express or implied, that after the purpose has been fulfilled they shall be redelivered to the bailor or otherwise dealt with according to his directions, or kept until he reclaims them.' 2 Bl. Com. 451, Story on Bailments (9th Ed.) par. 2." The court further said: "It is well settled that a bailment merely transfers the possession of the property, the absolute title of which is retained by the owner, who has the right to dispose of the same as he may see fit. * * * "

[2, 3] It has long been settled that, in the absence of some statutory enactment, title to goods not having passed under the agreement, the trustee could not assert ownership of chattels under bailment as in this case. The right of the trustee in this case is dependent upon the provisions of the Bankruptcy Law, and of the Statutes of South Carolina. Section 3740 of volume one of the Code of Laws of South Carolina reads as follows: "Every agreement between the vendor and vendee, bailor or bailee of per-

sonal property, whereby the vendor or bailor shall reserve to himself any interest in the same, shall be null and void as to subsequent creditors (whether lien creditors or simple contract creditors) or purchasers for valuable consideration without notice, unless the same be reduced to writing and recorded in the manner now provided by law for the recording of mortgages; but nothing herein contained shall apply to livery stable keepers, innkeepers, or any other persons letting or hiring property for temporary use or for agricultural purposes, or depositing such property for the purpose of repairs or work or labor done thereon, or as a pledge or collateral to a loan." It must be considered in connection with section 3542 of said Code, which requires the recording of certain agreements within 10 days. It must also be taken in connection with the various provisions of the Bankruptcy Act, including sections 47, 60, 67, and 70 (Comp. St. §§ 9631, 9644, 9651, 9654), in determining the general extent of the trustee's rights.

Section 47 (a) (2) provides that trustees shall "collect and reduce to money the property of the estates for which they are trustees, under 'the direction of the court, and close up the estate as expeditiously as is compatible with the best interests of the parties in interest; and such trustees, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon; and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied." This section is particularly applicable to the instant case, and when all of the provisions are taken together, it will appear as stated in Remington on Bankruptcy, § 1138, that—

"It is doubtless true that the trustee's title since the amendment of 1910 is the most extensive and complete of any in jurisprudence.

"It also must be borne in mind that the amendment of 1910, by placing the trustee in the position of an execution creditor with a levy on the property in his custody and with an unsatisfied execution on the property not in his custody, gives him more than the rights which any creditor might have chanced already to have asserted. It gives him in addition thereto, all rights which would have been obtainable by creditors un-

der state law had the trustee been an officer holding an execution or equitable process in behalf of all creditors. This right is not a right derived from existing creditors. It is not a transfer from any creditor by operation of law of that creditor's existing lien or levy, as seems to have been held in one case. It is a right derived from the statute itself conferring upon the trustee attributes of a creditor 'armed with process.' "

See, also, Remington on Bankruptcy, §§ 951 and 952.

[4] We find that the Bankruptcy Law would not be effectual to transfer the title in this case to the trustee in the absence of special statutory provisions upon the part of the state. Ludvigh v. American Woolen Co., 231 U. S. 522, 34 S. Ct. 161, 58 L. Ed. 345. It must, however, be remembered that the local laws determine the effectiveness of the transaction to accomplish the transfer of title and also the time when the title passes. Remington on Bankruptcy, § 1140.

"All rules concerning the transfer of property are 'primarily at least, a matter of state regulation, and not one of purely general commercial law,' * * * and state laws, creating interests in or liens upon property within the state, control the federal courts whenever the question arises as to the validity, extent, and all the conditions of such an interest or lien." In re Baxter & Co. (C. C. A.) 154 F. 22, 18 Am. Bankr. Rep. 450; Etheridge v. Sperry, 139 U. S. 266, 11 S. Ct 565, 35 L. Ed. 171.

The nature of the transaction, that is to say, whether for instance, it amounts to a sale or bailment or pledge or mortgage or some other transfer of property, or whether sufficient delivery has been made to pass title, or whether recording or filing of an instrument, be required, and, if so, as to whom it will be void for lack of recording, etc., is to be determined by the state law, and the bankruptcy court will take it as so determined. Id.; Chicago Union Bank v. Kansas City Bank, 136 U. S. 223, 10 S. Ct. 1013, 34 L. Ed. 341; Eaton v. Boston Safe Deposit & Trust Co., 240 U. S. 427, 36 S. Ct. 391, 60 L. Ed. 723, Ann. Cas. 1918D, 90, 36 Am. Bankr. Rep. 701; and Ward v. American Agricultural Chemical Co. (C. C. A.) 232 F. 119.

I am unable to find where section 3740 of the South Carolina Code above quoted has been construed by the state Supreme Court with relation to the exact question herein involved. In the case of Campbell v. First National Bank of Charleston, 115 S. C. 256,

105 S. E. 413, it was held not to apply to choses in action such as notes, bonds, mortgages, and other securities usually transferred by delivery or assignment, but to relate only to tangible personal property. Carolina National Bank v. City of Greenville, 97 S. C. 291, 81 S. E. 634. In the very recent case of Gulf Refining Co. v. McCandless, 118 S. C. 6, 109 S. E. 801, the court said: "In order properly to construe the words 'nothing herein contained shall apply to any persons renting or hiring property for temporary use," it is necessary for us to ascertain the intention of the statute. Its primary purpose, unquestionably, was the protection of subsequent creditors and purchasers for valuable consideration without notice. Therefore the word 'temporary' was not used in contradistinction to the word 'permanent,' or any definite period of time, but to indicate such length of time as is not reasonably calculated to mislead subsequent creditors and purchasers into the belief that the person in possession of the property is the owner thereof."

It must be remembered, however, that this related to the question of renting or hiring and is, therefore, not applicable to the present case. An analysis of the statute will show that apart from the exceptions set out it embraces, first, every agreement between bailor and bailee whereby an interest is reserved in the property, and, second, requires such an agreement to be reduced to writing, and, third, requires same to be recorded. It is admitted that the agreement here was neither reduced to writing nor recorded and since the statute covers every agreement between bailor and bailee, the agreement here must be void as to subsequent creditors, unless it be embraced in one of the exceptions contained in the proviso of the statute. This proviso refers to livery stable keepers, innkeepers, and any other person renting or hiring property for temporary use or for agricultural purposes, or depositing such property for the purpose of repairs, work or labor done thereon, or as a pledge or collateral to a loan. The facts do not bring the case within any of the exceptions. In the supplemental argument on behalf of petitioner it is earnestly urged that the agreement does not reserve an interest in the property, but that it reserves the entire title. We are unable to discover any merit in this contention. As stated above, it is an essential element of a bailment that the entire title is reserved to the bailor. The fact that title does not accompany possession is an essential character-

istic of bailments, distinguishing them from sales. It would seem, therefore, that the statute was intended to prevent one from placing in the hands of another, upon consignment or otherwise, tangible personal property to which title was reserved, and thereby clothing him with apparent ownership, and thus furnishing a basis of credit, unless and until the agreement of bailment should be reduced to writing and recorded. The Legislature saw fit to exempt certain classes of bailments from the operation of the statute and made it imperative that all others desiring protection against subsequent creditors should observe the requirements laid down.

The case of Townsend v. Ashepoo Fertilizer Co. (C. C. A.) 212 F. 97, applies to a contract between vendor and vendee. The reasoning, however, applies with equal force to contracts between bailor and bailee, since the same statute and the same provisions govern both. In that case it is said that "it would be difficult to frame statutes more comprehensive than those of South Carolina as to the instruments required to be recorded," quoting both section 3542 and 3740 of the Civil Code. After holding that the unrecorded agreement as between vendor and vendee in that case fell under section 3740, and was void as to subsequent creditors and that the property belonged to the trustee of the bankrupt, the court said: "Even if the contract had provided for a bailment instead of a sale of the fertilizer, the same result would follow, since the South Carolina statute covers bailments as well as sales."

It would be interesting, were it deemed necessary, to discuss the line of demarcation between those cases arising under the Bankruptcy Law prior to the 1910 amendment (36 Stat. 840) of section 47 and the subsequent cases and also the cases arising under section 3740 of the Civil Code of South Carolina prior to the amendment extending its provisions to simple contract creditors, as contrasted with the subsequent cases; but an elaborate discussion is unnecessary here. The distinction is clearly drawn in the opinion of the referee as the same relates to the Bankruptcy Law. See, also, Millikin v. Second National Bank of Baltimore (C. C. A.) 206 F. 14, 30 Am. Bankr. Rep. 477.

[5] It should be stated that, as we conceive the law, it is not necessary that all creditors who receive the benefit of the act should be subsequent creditors. The title of the trustee vests in right of any subsequent creditor for value without notice, and having vested

it inures to the benefit of all under the imperative general provisions of law for equitable distribution among all creditors. It should be added that I have reached the conclusions herein stated with considerable reluctance, and after most careful consideration. That a hardship is entailed upon petitioner cannot be doubted; still this hardship could have been avoided by observance of the requirements of the law. The Legislature has established rules for commercial dealings, of which petitioner and all others are charged with notice. That it failed to observe these requirements and to perform such acts as are required for its protection is due to its own neglect, and we are not permitted to set aside the provisions of the law to alleviate its misfortune.

The referee's order must be affirmed.