**PHELAN et al. v. STOCK YARDS BANK et al.**

No. 17789. Opinion Filed March 20, 1928.

Rehearing Denied Dec. 18, 1928.

## 14

S. A. Horton, for plaintiffs in error.

V. E. McInnis, Snyder, Owen & Lybrand, and Mont F. Highley, for defendants in error.

FOSTER, C. This action is brought by the Stock Yards Bank against the plaintiffs in error, defendants below, to foreclose a chattel mortgage on 26 head of cattle alleged to belong to John T. Phelan. The Citizens Finance Company and Maude Owen file answers and cross-petitions, claiming the identical chattel under similar mortgages as that of the Stock Yards Bank. These mortgages were given by J. B. Walker, or J. W. Walker, who appears from the testimony to be one and the same person. Other mortgages not involved in this appeal were given by Walker. Walker's wife also claimed the property, but did not appeal. Walker secured possession of the cattle under a contract dated August 10, 1925, the material parts of which are as follows:

"John T. Phelan, of Saline county, Mo., hereinafter known as party of the first part, and J. B. Walker, of Oklahoma county, Okla., known hereinafter as party of the second part; witnesseth:

"That party of the first part is the owner of a dairy farm, * * * with the improvements thereon, including 26 dairy cows, and one Holstein bull; and

"Party of the second part, desirous of entering into the dairy business, agrees with the party of the first part as follows:

"Party of the first part is to furnish the dairy farm, consisting of 200 acres, with improvements thereon, including 26 cows and one Holstein bull; and

"Party of the second part is, to do all the labor incident to taking care of the said farm, doing all work, and the taking care of said dairy stock which includes bottling of said milk, and delivering same to party designated by the first party for delivering of said milk which milk is to be ready for delivery by 6:30 a. m. each day.

"Party of the first part is to collect all money for the milk sold, and other income from the farm, and from such proceeds he shall pay all bills in the order as specified, in the following paragraph:

"Party of the second part agrees that for his compensation he shall receive the residue from the income after paying all the expenses, as follows:

"(1) The rent of $100 per month, which shall be paid in weekly installments of $23.

"(2) All labor bills, which have been contracted with the consent of first party.

"(3) All bills for feed for dairy cows.

"(4) The rental of said dairy herd, of $23.25 per week.

"(5) Sundry items, as ice or other necessary items.

"(6) The remainder, if any, shall be paid to party of the second part, as his sole compensation for his services. * * *

"This contract shall be from month to month, and shall continue as long as is agreeable to both parties, and in case either party desires to terminate this contract, he may do so by first giving to the other party written notice of his intention to terminate 30 days prior to date of which he so desires to discontinue this agreement.

"Signed in duplicate this 10th day of August, 1925.

"John T. Phelan, Party of the First Part.

"J. R. Phelan, His Attorney-in-Fact.

"J. B. Walker.

"Supplemental Agreement.

"John T. Phelan, hereinafter known as party of the first part, and J. B. Walker,

designated herein as party of the second part; witnesseth:

"In pursuance of a contract between the parties hereto, and in addition to other things, party of the first part has leased to party of the second part a herd of 26 dairy cows and one Holstein bull, for which the party of the first part purchased at a price of $1,440, party of the second part agrees to pay rental on said herd of $23.25.

"Now, therefore, it is agreed between the parties hereto that if the party of the second part shall comply with all his agreements with the party of the first part, as stipulated in their original contract, it is agreed that the party of the second part will be privileged to purchase the said herd of 26 cows and one Holstein bull at the original price of $1,440 with accumulated interest of 8 per cent. from date of this contract, and so much of the rental on said herd, as paid by party of the second part, shall be credited on the purchase price of the cattle with 8 per cent. added, and in case party of the second part does not purchase said dairy herd, then he shall pay rental as specified in original contract.

"It is agreed by the parties hereto that no stock shall be taken on the premises to feed or pasture without the consent of the first party.

"Signed in duplicate this 10th day of August, 1925.

"(Signed) John T. Phelan, Party of the First Part.

"J. R. Phelan, His Attorney-in-Fact.
"J. B. Walker, Party of the Second Part."

It appears that on August 9th, one day before executing the above contract, a similar contract was entered into between the same parties, except that there was no supplemental agreement to said contract, and in place of $23.25 a week rental for the dairy cows in the contract of August 10th, the contract of August 9th provided for $6.45, and did not include the Holstein bull; otherwise, the two contracts are identical.

After Walker mortgaged these cattle to all of the defendants in error and several other persons, he defaulted and left the country.

As there is no dispute between the mortgages, this appeal presents the two following questions: (1) Is the contract as above set out a conditional sales contract, or merely a rental contract with an option to buy? (2) Is the description in the mortgage to the Citizens Finance Company sufficient to give it a lien on what is known as the "Cobble" cow?

It is contended by the plaintiffs in error that, so far as the first proposition is concerned, the testimony introduced at the trial is of no help to either plaintiffs or defendants, and that the sole question presented is whether or not the contract as it existed was a conditional sales contract, it being admitted that said contract was not placed of record.

From the testimony it appears that when Walker defaulted and delivered the cattle to plaintiffs in error, and for sometime prior thereto, he had claimed an equity in the property, which plaintiff in error Phelan did not deny. It also appears that Phelan, on August 11th, the day after the last contract was executed, charged Walker with $6.45 as rent.

These facts, we believe, throw some light upon the intention of the parties at the time of the execution of the contract.

Under section 8551, C. O. S. 1921, if a contract is a conditional sales contract, then the same is void as against innocent purchasers and incumbrancers for value, because it is admitted that the same was not recorded.

From an examination of this contract, together with the testimony, we believe the same is a conditional sales contract. The courts of this country have frequently found it difficult to distinguish accurately between conditional sales and sales on condition or executory contracts or leases and bailments for use. But the general rule followed by all courts in determining whether a contract is a lease, a sale on condition, or a conditional sale, is to ascertain from the contract itself, and the facts and circumstances surrounding its execution, the real intent of the contracting parties at the time the contract was entered into.

An executory contract, or a sale upon condition, has been defined by our court, as well as many other courts, as one where the title does not vest at the time of the transaction, but only vests upon the happening of a future condition, and the vendee does not hold title to the property; but if in possession, his holding is similar to a bailment, lease, or rental. A conditional sale is one where the property is delivered to the vendee and the purchase price is agreed upon and part of it paid, or none of it paid, but to be paid for in the future, and it being agreed that title does not pass until the full purchase price is paid. Such a contract is a conditional sale, though in the form of a lease. Tague v. Guaranty State Bank, 82 Okla. 197, 202 Pac. 510; Brooks v. Tyner, 38 Okla. 271, 132 Pac.

683; Hamilton v. Highlands, 144 N. C. 279, 12 Am. & Eng. Ann. Cases, 878.

In the case of Hamilton v. Highlands, supra, the contract was in the form of a lease and provided that the property should be rented on the payment of $50 cash and $15 per month, the payments to bear interest and the property to be returned in good condition at the end of the term; that in case of the failure on the part of the vendee to pay the installments, the vendor to have possession, without notice, with an option in the contract that the vendee should have the right to purchase the property by keeping up the rents, and could apply the payments on the purchase price.

The contract in the Hamilton Case is very similar to the case at bar, with the exception that there was no provision in the Hamilton Case that the contract might be terminated at any time by either party giving the other party notice. In other respects, the contracts were very similar. It was held in the Hamilton Case that this was a conditional sale, and not a lease, although the form of the contract and the language used therein indicates the same to be a lease.

In the case of Hervey v. R. I. Locomotive Works, 93 U. S. 664, 23 L. Ed. 1003, in discussing the interpretation of a contract to determine whether the same is a conditional sale or not, the court uses the following language:

"Courts will always look to the purpose to be attained by the contract rather than the name given to it by the parties in order to determine its character. If that purpose be to give the vendor a lien on the property until payment in full of the purchase money, it is liable to be defeated by the creditors of the purchaser, who is in possession of it."

To the same effect is 24 R. C. L., on Sales, section 748.

Many cases are cited by the plaintiffs in error to the effect that a mere lease, with the privilege to purchase, is not a sale. Property may be leased under a written contract which provides for an option to buy, but, as stated by many of the courts, such a contract must not be used as a cloak to cover the real nature of the transaction.

The contract in the case at bar provides for payments, as rent, of $23.25 weekly. The entire purchase price under the contract would be paid in about 14 months, as the value of the property is fixed at only $1,440, with interest. The testimony shows that these payments were made for about 25 weeks, and that Walker was allowed to have possession of the property and exercise control over it as though it were his own. The plaintiff in error Phelan contends that on account of Walker's default, he (Phelan) was entitled to apply as rent all the installments or payments made by Walker at the rate of $23.25 per week.

Under plaintiffs in error's contention, Walker was paying, as rent, weekly installments that would have made him owner of the property in a little over a year. In other words, Walker was willing to pay, and did pay, as rent the same payments that he would have had to pay had be been purchasing the property.

As stated by an eminent authority, we cannot imagine that a business man of common sense would rent property upon exactly the same terms as he could buy it, and yet, under plaintiff's contention, this is exactly what Walker was doing.

The latter part of the supplemental agreement, entered into on August 10th, contains the following clause:

"And in case party of the second part (Walker) does not purchase said dairy herd, then he shall pay rental as specified in the original contract."

It is contended by plaintiffs in error that this clause refers back to the original part of the contract entered into on the 10th day of August, but to our minds it refers back to the contract entered into on the 9th day of August. It would be useless and meaningless to refer to the contract of the 10th, as that contract provided for $23.25 a week, both in the original part and in the supplement. The contract of August 9th provides a weekly rental of $6.45, which was the rent to be paid in case Walker did not exercise his privilege to buy, as we understand the meaning of this clause. Phelan must have so understood it when he made his charge of $6.45 on August 11th.

It is true that the plaintiffs in error testified that this discrepancy in the two contracts was a mistake, but the court evidently found otherwise from the testimony and circumstances in the case, and we believe there is sufficient evidence to justify the court's finding.

Under all the circumstances, we believe the court was correct in holding this contract a conditional sale.

The next proposition is concerning the "Cobble" cow. The question presented is whether or not there was a sufficient description in the mortgage of the Citizens

Finance Company to put a person on notice as to whether this particular cow was included in the mortgage. The description in the mortgage was as follows: "One 5-year old Holstein cow, purchased from Bill Cobble." There is testimony that this cow was not a Holstein cow, but was a Swiss Jersey. But all the witnesses seemed to know this cow as the "Cobble" cow, and there appeared to be little question about its identity. All the witnesses seem to understand what cow was in dispute.

In the case of Hillery v. Waurika Nat. Bank, 100 Okla. 34, 226 Pac. 1051, the court held:

"It is not essential that the property covered by a chattel mortgage be so specifically described that it may be identified by the mortgage alone. Such description is sufficient if it suggests inquiry or means of identification which, if pursued, will disclose the property conveyed."

In Mathis v. Guaranty Nat. Bank of Porum, 105 Okla. 69, 231 Pac. 500, the second paragraph of the syllabus is as follows:

"The sufficiency of the description of property in a mortgage is a question of fact, and when submitted to the jury under proper instructions and there is evidence reasonably tending to support the verdict, the same will not be disturbed on appeal."

It is well established in Oklahoma that a case having been tried by the court, without a jury, and there is testimony in the record reasonably tending to support the finding of the trial court, the same will not be disturbed in the Supreme Court on appeal.

We believe there is evidence reasonably tending to support the courts finding that the description in the mortgage was sufficient, under the above rules, and therefore the same will not be disturbed.

For the foregoing reasons, the judgment of the trial court is affirmed.

TEEHEE, REID, LEACH, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.