**In the Matter of WRIGHT HOMES, INC., Bankrupt.**

**No. B-85-66.**

United States District Court
M. D. North Carolina.

Jan. 30, 1968.

William Zuckerman, Greensboro, N. C., for plaintiff.

R. D. Holleman, Durham, N. C., for trustee.

E. K. Powe, Durham, N. C., for bankrupt.

## MEMORANDUM OPINION AND ORDER

GORDON, District Judge.

This matter comes before the Court on a petition by the National Acceptance Corporation (hereinafter the petitioner) for review of an order of the Referee in Bankruptcy, Rufus W. Reynolds, dated August 7, 1967. The order of the Referee denied the National Acceptance Corporation's claim to the proceeds from the sale of certain property in the hands of the Trustee.

The controversy arises out of a contract entered into by the petitioner and Wright Homes, Inc. (hereinafter the bankrupt). The property which was the subject matter of this contract has been sold by the Trustee with the rights of the parties transferred to the proceeds from the sale. It has been conceded by the petitioner and the Trustee in Bankruptcy that if the contract is a lease agreement, the petitioner is entitled to the proceeds, but if the contract is a

conditional sale then the Trustee is entitled to the proceeds. This is because of the North Carolina recordation statutes which require a conditional sales contract to be recorded to be good against lien creditors and purchasers for value. A lease agreement need not be recorded. The contract here involved was not recorded. The Referee concluded from the facts that the contract, although in the form of a lease, was in fact a conditional sale.

 In reviewing the findings of fact of the Referee, the Court must accept his findings unless such are clearly erroneous. General Order in Bankruptcy, 47, 11 U.S.C.A. following § 53; Mountain Trust Bank v. Shifflett, 4 Cir., 255 F.2d 718 (1958); Austin v. National Discount Corp., 4 Cir., 322 F.2d 928 (1963). In the subject case, it is concluded that the Referee's findings are supported by substantial evidence and constitute a clear and accurate statement of the relevant facts.

Nevertheless, this Court assumes the responsibility of determining if correct principles of law were applied. To this end, and because of the peculiar nature of the contract between the petitioner and the bankrupt, it is necessary to set forth the essential nature of the agreement and the circumstances surrounding its inception.

The bankrupt was principally in the business of prefabricating houses and apartment buildings. The bankrupt entered negotiations for the purchase of a Clary Craftsmaster Saw and a Titon 40 Model Auto-Nailer from the respective manufacturers of these machines. Pursuant to these negotiations, the contract now in question was entered into with the petitioner. It should be noted that the petitioner's principal business is financing and not leasing business equipment and machinery.

The contract itself was entitled a lease and the parties were referred to as lessor and lessee. There was an original three-year lease term and thereafter the lessee had the option to renew each year for an indefinite period. The title to

the machinery was expressly to remain with the lessor, but the terms of the agreement were to some extent foreign to the generally recognized concept of a lease:

1. The total rentals over the original three-year term were in excess of the actual purchase price of the machinery and the annual rental for each additional year in which the lease was extended was to be nominal in relation to the rate during the original term; [1]

2. The lessee was to pay all taxes on the machinery;

3. The lessee had to provide insurance on the machinery;

4. Upon default the lessee was liable in liquidated damages equal to that portion of the total rent for the original term remaining unpaid regardless of when the default occurred;

5. The default clause gave the lessor the option to sell the machinery at public or private sale and apply the proceeds to the unpaid rentals.

There has been much litigation involving agreements framed in the language of a lease but giving the lessee an option to purchase the subject matter of the lease at the end of the so-called lease term. Those agreements in which total rentals substantially equaled the purchase price and the option to purchase was exercisable for a nominal sum have generally been found to be conditional sales.[2] But if total rentals were less than the purchase price and the cost of the option to purchase was more than nominal, the agreements have been upheld as leases.[3]

The agreement between petitioner and the bankrupt is distinguishable from these cases by the absence of an option to purchase. There is, in fact, an express provision that title to the subject matter is under no circumstances to leave the petitioner. It is this distinguishing factor which provides the overriding issue of law in the controversy between petitioner and the trustee: Is the transfer of legal title an essential element of a conditional sales contract, distinguishing it from a lease?

The traditional distinction between a conditional sale and a lease or bailment of personal property has been the matter of title transfer. Black's Law Dictionary distinguishes a bailment from a conditional sale:

> *"Conditional sale.* Contemplates that at some time the title shall pass to the purchaser and that he shall pay the purchase price, while a 'bailment' contemplates that the title shall not pass to the bailee, but remain in the bailor, and that the property shall be returned to the bailor. Vermont Acceptance Corp. v. Wiltshire, 103 Vt. 219, 153 A. 199, 200, 73 A.L.R. 792."

| I. Machinery | Purchase Price | Total Rent for Initial Term | Cost of Annual Option to Renew |
| --- | --- | --- | --- |
| Clary Craftsmaster Saw | $12,348.59 | $14.358.96 | $185.23 |
| Titon 40 Model Auto-Nailer | $ 7,600.00 | $ 8,837.28 | $114.00 |

2. Oesterreich v. C. I. R., 9 Cir., 226 F.2d 798 (1955); Stern v. Drew, 191, 285 F. 925 (1922); Berry v. Ellis, 200 N. C. 283, 156 S.E. 487 (1931); Hamilton v. Hilands, 144 N.C. 279, 56 S.E. 929 (1907); Thomas v. Cooksey, 130 N.C. 148, 41 S.E. 2 (1902); Wilcox v. Cherry, 123 N.C. 79, 31 S.E. 369 (1898); Puffer & Sons Manufacturing Co. v. Lucas, 112 N.C. 377, 17 S.E. 174, 19 L.R.A. 682 (1893).

3. Kitchin v. C. I. R., 4 Cir., 353 F.2d 13 (1965); Breece Veneer & Panel Co. v. C. I. R., 7 Cir., 232 F.2d 319 (1956); Benton v. C. I. R., 5 Cir., 197 F.2d 745 (1952).

In Sturm v. Boker, 150 U.S. 312, 329, 14 S.Ct. 99, 104, 37 L.Ed. 1093, 1100 (1893), the United States Supreme Court said:

"The recognized distinction between bailment and sale is that, when the identical article is to be returned in the same or in some altered form, the contract is one of bailment, and the title to the property is not changed. On the other hand, when there is no obligation to return the specific article, and the receiver is at liberty to return another thing of value, he becomes a debtor to make the return, and the title to the property is changed. The transaction is a sale."

The Fourth Circuit has noted that reservation of title is the essence of a lease agreement:

"As stated above, it is an essential element of a bailment that the entire title is reserved to the bailor. The fact that title does not accompany possession is an essential characteristic of bailments, distinguishing them from sales. [In re Tansill, 4 Cir., 17 F.2d 413, 416 (1922)]."

More pointedly, the court in In re Atlanta Times, (N.D.Ga.) 259 F.Supp. 820, 827 (1966) said:

"In the absence of a right or option in the lessee to acquire ownership of the leased property, the transaction is one of lease."

It is to be noted that agreements have been upheld as leases although the lessee had an option to purchase at the end of the lease term,[4] but no cases have been found holding an agreement to be a conditional sale in the absence of an option to purchase.

The Trustee's argument that the agreement between petitioner and bankrupt was a conditional sale rather than a lease, although title was expressly to remain in petitioner, ignores the estab-

lished distinction. Without the relatively clear delineation between sales and leases inherent in the title transfer distinction, each contract would require independent analysis of the entire transaction and even then there could be no more than intelligent speculation as to where a court might arbitrarily place ownership. The resulting uncertainty in transactions with the parties and subject matter of such contracts could produce chaotic effects in a complex business community like that existing today. If the trustee's position is to be accepted, a lessor who drives a hard bargain could not be sure that he has not actually parted with ownership of the property involved. Prospective purchasers from the lessor and creditors of the lessee would be subject to the same uncertainties.

Although bankruptcy courts are given broad equitable powers in resolving controversies between creditors of the bankrupt, where ownership of property is in question general principles of law in the state of the transaction govern:

"The nature of the transaction, that is to say, whether for instance, it amounts to a sale or bailment or pledge or mortgage or some other transfer of property, or whether sufficient delivery has been made to pass title, or whether recording or filing of an instrument, (sic) be required, and, if so, as to whom it will be void for lack of recording, etc., is to be determined by the state law, and the bankruptcy court will take it as so determined. [In re Tansill, 4 Cir., 17 F.2d 413, 416 (1922)]."[5]

In United States Leasing Corporation v. Hall, 264 N.C. 110, 141 S.E.2d 30, (1965), the North Carolina Supreme Court was presented with a contract almost identical to the one between the petitioner and the bankrupt. There was

---

4. See Footnote 3, supra.

5. See also, Fowler v. Pennsylvania Tire Co., 5 Cir., 326 F.2d 526, 530 (1964); Consolidated Royalties, Inc. v. Ashton, 9 Cir., 132 F.2d 226, 229 (1942); 6 Am.

Jur. § 901; General Motors Acceptance Corp. v. Horton, 3 Cir., 85 F.2d 452, 453 (1936); Annot., 16 A.L.R.2d 839 (1951); 6 Am.Jur.Bankruptcy § 845 (1950).

a five-year initial lease term with total rentals during that term ($2,132.40) amounting to more than 142 per cent of the purchase price of the machinery ($1,500.00). The lessee had an option to renew the lease each year after the initial term.[6] In an attempt to defeat the lessor's claim for rent due, the lessee contended that the agreement actually constituted a conditional sale of the machine. The lower court allowed a nonsuit as to the lessor, but on appeal the Supreme Court found the contract to be a lease in the absence of fraud or misrepresentation. The North Carolina Court further found that the written agreement expressed the true intent of the parties and parol evidence to contradict its terms should be disallowed.

The District Court of Georgia's Northern District was presented with a very similar agreement in the case of In the Matter of Atlanta Times, Inc., Bankrupt (N.D.Ga.), supra, aff'd Sanders v. National Acceptance Co. of America, 5 Cir., 383 F.2d 606 (1967). The contract provided a lease term of ten years with rentals amounting to more than 125 per cent of the purchase price. The lessee went into bankruptcy and the lessor attempted to exercise his rights under the default provision of the contract. The trustee in bankruptcy contended that the agreement was a security interest within the meaning of the Uniform Commercial Code as it exists under Georgia law, but the district court upheld the agreement as a lease, refusing to allow parol evidence of a side agreement giving lessee the option to purchase for a nominal sum at the end of the lease

period. There was no mention in the decision of an option to renew the lease after the ten-year initial lease term.[7] The court relied heavily on the absence of an option to purchase but also placed weight on the fact that the machinery would have substantial value at the end of the ten-year lease term.

■■ In comparison, the agreement between Wright Homes and the petitioner allowed the lessee to renew the lease after the original three-year term at a nominal price (1½% of the original cost).[8] It is significant that the Referee's findings show the machinery to have a useful life of ten years and the total rentals over the three-year term to be in excess of the purchase price of the machinery. Wright Homes would certainly exercise the renewal option until the machinery became valueless by reason of normal wear and tear or obsolescence. But this Court does not recognize as a persuasive factor in determining the nature of an agreement the presence or absence of substantial value in the subject matter at the end of the contract term. The object of any lease is to achieve for the lessor a return of capital investment, plus a reasonable profit. A lessor attempts to keep his property leased until it becomes valueless and the contention that this loss of value somehow effects the ownership of the property is not convincing.

■ It is clear that the agreement here in controversy is, at least in part, an attempt to circumvent the North Carolina registration requirements for conditional sales, but the existence of ques-

6. A copy of the agreement between U. S. Leasing Company and Hall Supply Company was attached to the petitioner's brief. It reveals that there was a provision for renewal of the lease after the initial term, but the rental to be paid in each year the lease was extended was left out. This may account for the North Carolina court's finding that the lessee agreed to surrender the machine to the lessor at the end of the initial term. See, 141 S.E.2d at 31.

7. The per curiam opinion in the Circuit Court stated that:

"There were renewal provisions at stated prices but the evidence was sufficient, based on market value, to support a finding that the prices were substantial as distinguished from a mere nominal price." Sanders v. National Acceptance Co. of America, 5 Cir., 383 F.2d 606 (1967).
It is not evident from the decision of the Circuit Court exactly what percentage of the market value constitutes a "substantial" renewal price.

8. See Footnote 1, supra.

tionable motives cannot detract from the validity of the agreement as a lease. There was no fraud or misrepresentation and the language of the instrument is clear and unambiguous. Ownership is expressly to remain in the lessor and this Court cannot place it with the lessee.

It is unfortunate if the creditors of the bankrupt extended additional credit or neglected to seek satisfaction of overdue debts in the belief that the machinery named in the agreement would be subject to levy by them. But creditors fearful of their ability to collect must accept the responsibility of ascertaining the extent of the debtor's assets. The agreement could have been demanded of the bankrupt for inspection just as an ordinary lease.

It follows that the proceeds of the sale of the Clary Craftsmaster Saw and the Auto-Nailer now in the hands of the trustees be paid over to the petitioner.

It is so ordered.