**In re JOE NECESSARY AND SON, INC., Debtor.**

**RISH EQUIPMENT COMPANY, Plaintiff/Appellant,**

v.

**JOE NECESSARY AND SON, INC., Defendant/Appellee.**

**Civ. A. No. 78–00036A(1).**

United States District Court, W. D. Virginia, Abingdon Division.

Aug. 23, 1979.

---

William Rogers McCall, Bristol, Va., Charles W. Davis, Bluefield, W.Va., for Rish Equipment Co.

James E. Nunley, Bristol, Va., for Joe Necessary and Son, Inc.

## MEMORANDUM OPINION

TURK, Chief Judge.

This case is before the Court on appeal by Rish Equipment Company ("Rish") from a determination by the Bankruptcy Court that Rish's interest in certain property in possession of the debtor, Joe Necessary and Sons, Inc. ("Necessary"), was that of a secured lender. Rish here contends that the Bankruptcy Court erroneously required it to shoulder the burden of persuasion with respect to the nature of its interest in the property and, secondly, that the Bankruptcy Court erred in its determination that the transaction at issue was a conditional sale rather than a true lease.

On March 14, 1978, the appellee filed a petition for arrangement under Chapter XI of the Bankruptcy Act in the United States District Court for the Western District of Virginia. A hearing was held *ore tenus* on July 6, 1978 pursuant to appellant's request for reclamation of an item of heavy equipment, one IHC Model 260A Loader/Backhoe. Appellant contended that the property had been leased to Necessary and, thus, that it was entitled to possession thereof upon Necessary's default under the lease obligation.[1] Necessary in turn asserted ownership over the property on the ground that the transaction between the parties

---

1. It appears that at the time of the hearing Necessary was in arrears under the "lease" to the extent of some $5,672.25. The terms of the lease also specified that the institution of any bankruptcy proceedings by or against Necessary constituted a default.

had been a conditional sale and hence that title had passed to it by the terms of the agreement.

In support of its contentions, Rish introduced a document signed by both parties and dated May 2, 1977 which was termed a "Lease Agreement." By the terms of the agreement, monthly rental was to be $900, subject to increase if use of the equipment exceeded 10 hours per day or 200 hours per month. Ther term of the "lease" under the agreement was to extend indefinitely, beginning on the date of delivery and ending on the day the equipment was returned, and the agreement required Necessary to maintain the operating condition of the equipment at its own expense; to pay all taxes and other fees on the equipment even though they be assessed against Rish; to secure any licenses or permits necessary for use of the equipment; and to secure and maintain insurance for the loss, damage, or destruction of the equipment. The agreement disclaimed the warranties of merchantability, fitness for a particular purpose, and all other implied warranties, and it also disclaimed any express warranties not committed to a writing. By the terms of the agreement, Necessary assumed all responsibility for damage to or loss of the equipment as well as for any damages resulting from its use. Rish disclaimed any liability to Necessary for loss of time or damages suffered by Necessary as a result of defects or inefficient operation of the equipment. Finally, the agreement, after specifying that title to the equipment remained vested in Rish, granted to Necessary the option, exercisable at any time during the life of the agreement, to purchase the equipment at a price of $25,000. In the event that Necessary chose to exercise the option, however, it was entitled to a $650.00 credit for each month's rent paid, to be applied against the purchase price; this credit was not to exceed a maximum of 75% of this price. In addition to the introduction of the above document, Rish produced its credit manager at the hearing, who testified that the contract between the parties was intended to be a lease, and not a sale.

Necessary in turn introduced a document signed by Necessary and dated April 29, 1977 which bore the headings "Rish Equipment Company" and "Order." The "Order" described the equipment, stated the purchase price to be $25,000, imposed a 3% sales tax on the transaction, specified delivery F.O.B. at St. Albans, West Virginia, and stated the terms to be "Rental." On the reverse side of the "Order" appeared "Terms and Conditions" to which Necessary had agreed by virtue of its execution of the "Order." These terms provided that title and right of possession remained with Rish "until the Company has received the full price therefor as herein provided." The terms additionally purported to disclaim any express warranties save those committed to a "writing signed by an executive or manager of the company" and further provided that,

[i]n any case where there is an express warranty by the Company of the property sold or any part of it, the Company may, at its own expense, reclaim the item so warranted and repay to the purchaser any sums which may have been paid thereon, and such repayment shall satisfy and fully discharge the Company's entire liability arising out of this sale.

These "Terms and Conditions" concluded with a merger clause stating that,

[a]ll the terms of this sale are embodied herein, and no agreement, guaranty or warranty, oral or written, express or implied, not included herein shall in any way enlarge, limit or qualify the rights or the liabilities of the purchaser or the Company.

Having introduced this document, Necessary produced witnesses who testified generally that the "Order" was intended to be a purchase order, that the equipment had been received prior to the parties' execution of the "lease," and that the equipment, virtually new at the time Necessary took delivery, had been maintained by it in excellent working condition with the result that it had slightly appreciated in value during the period of Necessary's possession thereof.

After consideration of all the evidence, the Bankruptcy Judge found that the parties had intended to effect a conditional sale rather than a true lease. Rish now prosecutes this appeal from the Bankruptcy Court's order denying its prayer for reclamation.

■■■ In its first allegation of error, the appellant contends that the burden of persuasion with respect to the state of title to the equipment was improperly allocated to it by the Bankruptcy Judge. In support of this contention, the appellant has directed the court's attention to a statement made by the Judge in his Memorandum Opinion to the effect that "the burden of proof rests upon the plaintiff in a hearing pursuant to a petition for reclamation." It is well-settled, as appellant has pointed out, that where,

> . . . the claimant has established a claim to property . . . the burden of demonstrating that the property should remain in the estate must be shouldered by the trustee.

*Jackson Sound Studios, Inc. v. Travis,* 473 F.2d 503, 505 (5th Cir. 1973). There is nothing in the brief statement of the Bankruptcy Judge relied upon by the appellant, however, to indicate that he found otherwise. The description of events during the reclamation proceeding, as set out in the Bankruptcy Judge's memorandum opinion, demonstrates that the burden of proving ownership was shifted to and fully carried by the appellee precisely as the appellant would require.[2] The court accordingly finds no merit in appellant's contentions in this regard.

Appellant's second, and more substantial, assignment of error is predicated on the Bankruptcy Judge's determination that the parties had effected a conditional sale by virtue of the transactions here at issue and had not, as appellant contends, entered into a leasing arrangement. The Bankruptcy Court's finding in this regard was made pursuant to Virginia Code § 8.1–201(37) which provides, in pertinent part:

> *Whether a lease is intended as security is to be determined by the facts of each case*; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.

Virginia Code § 8.1–201(37) (emphasis supplied). As is indicated by the here emphasized portion of § 8.1–201(37), the appellant's second assignment of error operates to challenge the Bankruptcy Judge's factual determination that the intent of the parties was to enter into a security agreement. Consequently, prior to the court's further examination into the merits of appellant's appeal, it must determine the proper scope of review applicable to such an assignment of error.

■■■ The court's jurisdiction over this proceeding is conferred by § 2a(10) of the Bankruptcy Act, Title 11 U.S.C. § 11a(10).[3] Implementing this statutory provision, Bankruptcy Rule 810 requires a district court sitting in review of a Bankruptcy Judge's factual determinations to affirm these determinations unless they are "clearly erroneous."[4] At issue in this appeal is

---

**2.** The Memorandum Opinion of the Bankruptcy Judge shows that once the appellant had introduced evidence establishing his *prima facie* case of ownership, i. e., the "Lease Agreement" and certain testimony, the appellee introduced evidence—the purchase "Order" and further testimony—in support of its own claim to title. The court consequently fails to see how the burden of persuasion was in fact improperly allocated in these proceedings.

**3.** Title 11, U.S.C. § 11a(10) empowers the court to:

> [c]onsider records, findings, and orders certified to the judges by referees, and confirm, modify, or reverse such findings and orders, or return such records with instructions for further proceedings . . . ..

**4.** Bankruptcy Rule 810 provides, in pertinent part:

> [t]he court shall accept the referee's findings of fact unless they are clearly erroneous, and

the intention of the parties, as shown by the evidence presented before the Bankruptcy Court, relative to the nature of the agreement entered into between them. The establishment of this intent calls for a factual finding by the Bankruptcy Judge:

> In reclamation proceedings, the findings of the referee on questions of intent . . are questions of fact, or in some instances, mixed questions of law and of fact, and the findings of the referee . . . will not be set aside on anything less than a demonstration of clear mistake in applying the law.

*Tepper v. Chichester*, 285 F.2d 309, 312 (9th Cir. 1960). Accordingly, unless "on the entire evidence [the court is] left with the definite and firm conviction that a mistake has been committed"[5] by the Bankruptcy Judge, his finding must be affirmed. *In re Kirk Kabinits, Inc.*, 393 F.Supp. 798, 802 (M.D.Ga.1975).

The appellant appears to have made the assumption that the Bankruptcy Court's denial of its petition for reclamation was grounded upon a finding that the option price as calculated under the "Lease Agreement" was "nominal,"[6] and appellant has directed the thrust of its argument on appeal toward a showing that this price was other than "nominal." It is evident, however, that the Bankruptcy Court's decision was not premised upon such a finding.

Rather, a reading of his Memorandum Opinion demonstrates that in concluding that the parties intended to enter into a conditional sale, the Judge properly looked to the unique facts of the transaction at issue, an approach mandated by § 8.1–201(37), which specifies that in cases involving a non-nominal option price "[w]hether a lease is intended as security is to be determined by the facts of each case . . .."

The factors which the Bankruptcy Court considered in concluding that the parties had intended to enter into a conditional sale included: 1) Necessary's equity in the equipment; 2) the "Order's" imposition of a sales tax on the transaction; 3) the agreement's requiring Necessary to acquire and maintain comprehensive insurance protection; 4) the fact that Necessary was to make payment for any taxes assessed on the equipment; and, 5) the fact that Necessary was required, under the terms of the agreement, to secure any licenses or permits prerequisite to its operation of the equipment.[7] Of these factors, of principal import to the Bankruptcy Judge's conclusions was the fact that Necessary, by virtue both of the equipment's appreciation during the period of its possession and of the agreement's application of more than two-thirds of Necessary's monthly "rental payments" toward the option price, had acquired substantial equity in the equipment.[8]

shall give due regard to the opportunity of the referee to judge of the credibility of the witnesses.

5. *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1947). While the quoted material represents the Supreme Court's interpretation of the "clearly erroneous" standard in the context of an appeal to the circuit courts, because this court functions in an appellate capacity in this proceeding and because the same standard has been made applicable to it by Bankruptcy Rule 810, the interpretation is a persuasive indication of the court's own scope of review on appeal from a factual determination made by the Bankruptcy Court.

6. Virginia Code § 8.1–201(37)(b) provides that: (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or

for a nominal consideration does make the lease one intended for security.

7. In addition to these indications of the parties' intent, this court takes cognizance of the fact that, as is shown by memoranda submitted by the parties, appellee's use of the equipment over the fifteen-month period of its possession thereof totalled some 540 hours. By the terms of the agreement, however, appellee was entitled to a maximum use, over a fifteen-month period, of 3,000 hours. Such limited use of the equipment lends further support to the Bankruptcy Court's determination that a conditional sale was the essence of this transaction.

8. "By crediting earlier payments of rent to the purchase price, the lessee is accorded an equity or pecuniary interest in the subject matter of the lease which he may recover at his option." *In re Royer's Bakery, Inc.*, 14 UCC Rep.Ser. 342, 345 (E.D.Pa.1963).

Equity in the "lessee" has been held to be "one of the distinctive characteristics of a lease intended for security." *Matter of Tillery*, 571 F.2d 1361, 1365 (5th Cir. 1978).[9]

The Bankruptcy Court went on to find that each of the factors in addition to Necessary's equity in the equipment further buttressed Necessary's contention that the parties had intended to effect a conditional sale. While the court may concede that these other indicia are consistent with either a conditional sale or a true lease, it must be remembered that the scope of the court's review on the factual question of intent is limited by the "clearly erroneous" standard of Bankruptcy Rule 810. When these remaining factors are reviewed against the backdrop of Necessary's having acquired equity in the equipment, this court is unable to find that the Bankruptcy Court's factual conclusion relative to the parties' intent has reached the "clearly erroneous" threshold.

On the basis of the record before the court, it is of the opinion that this factual finding is sufficiently supported by the evidence to withstand the appellant's attack on it in this court. The parties having entered into a conditional sale and, as was concluded by the Bankruptcy Judge, appellant's interest in the equipment having therefore been unperfected, the Bankruptcy Court's denial of appellant's petition for reclamation is hereby AFFIRMED.

---

9. *Accord, In re Lockwood*, 16 UCC Rep.Ser. 195 (D.Conn.1974) (where a finding that the lessee had acquired equity in the leased property led the court to conclude, as a matter of law, that the transaction at issue had been in substance one intended for security).