**In re Robert F. WEISKOTTEN t/a Graham's Forge Farms, Debtor.**

**Robert F. WEISKOTTEN t/a Graham's Forge Farms c/o Byron R. Shankman, Esq., Plaintiff,**

· v.

**GOFORTH TRACTOR, INC. c/o Thomas B. Baird, Esq., Defendant.**

**Bankruptcy No. 76–40–A.**

United States Bankruptcy Court, W. D. Virginia.

Oct. 4, 1979.

Byron R. Shankman, Pulaski, Va., for plaintiff.

Thomas B. Baird, Wytheville, Va., for defendant.

## MEMORANDUM OPINION AND ORDER

H. CLYDE PEARSON, Bankruptcy Judge.

Robert F. Weiskotten, Debtor, filed this Complaint seeking a determination of his rights to property obtained by a lease purchase agreement from the Defendant, Goforth Tractor, Inc.

The Plaintiff filed a petition seeking relief by way of an Arrangement under Chapter XI of the *Bankruptcy Act* on February 25, 1976. Upon his petition, the Chapter XI case was converted to Chapter XII of the *Bankruptcy Act,* on April 6, 1976.

Prior thereto on December 15, 1975, Plaintiff and Defendant had entered into an "option to purchase" agreement in the nature of a lease of one Case Crawler Tractor, Model 450. The agreement was supplemental of an original agreement previously entered into between the parties in May of 1975. The lease agreement provided that the Plaintiff may exercise an option to purchase under the terms of the contract by paying the remaining sum of THREE THOUSAND FOUR HUNDRED TWENTY and 00/100 DOLLARS ($3,420.00), after credit of rental payments made. The rental payments were FIVE HUNDRED FIFTY and 00/100 DOLLARS ($550.00) per month, with EIGHTY–FIVE PERCENT (85%) of said amount to be applied to the purchase price. In addition to the THREE THOUSAND FOUR HUNDRED TWENTY and 00/100 DOLLARS ($3,420.00), the Plaintiff agreed to pay all sales and other taxes imposed upon the transaction and to pay the remaining balance in cash or agreed terms.

The further evidence presented upon trial of the Complaint consisted of claims and counterclaims between the Plaintiff and Defendant for rental services supplied each unto the other, following the date of the agreement, and during the pendency of this Chapter proceeding. Neither party kept accurate records concerning the transactions involved and the evidence of each of the parties was in substantial conflict as to what credits should be allowed upon their respective accounts.

Following the date of the petition, and during a portion of time while these proceedings were pending, the equipment described in the agreement was in the possession of the Defendant with the consent of the Plaintiff and was being used from time to time by both the Plaintiff and the Defendant. The Defendant had full knowledge of these proceedings, and, in fact, had made an inventory and appraisal of the

equipment of the Debtor for use by the Court in which defendant included the Case Tractor at a value of SEVEN THOUSAND and 00/100 DOLLARS ($7,000.00).

At a later date, without obtaining leave of this Court, or consent of the Debtor, Defendant proceeded to repair the tractor, in preparation for sale and expended for such purpose the sum of TWO THOUSAND ONE HUNDRED NINETEEN and 88/100 DOLLARS ($2,119.88). Thereafter, without obtaining leave of Court or consent of the Debtor, the Defendant sold the tractor for the sum of EIGHT THOUSAND and 00/100 DOLLARS ($8,000.00). Upon learning of the sale, this Complaint was instituted.

The Plaintiff contends that the lease option constituted a sale reserving security interest; that the tractor belongs to the Plaintiff and was improperly sold by the Defendant.

The Defendant contends that the agreement was a pure lease agreement which had been voided by the default of the Plaintiff, and, hence, was the property of the Defendant as a simple lease.

■ At the time the petition was filed under Chapter XI on February 25, 1976, a stay against creditors was invoked as to their actions and lien enforcement, pursuant to *Bankruptcy Rule* 11–44.[1] The conversion of the case to Chapter XII invoked a similar stay pursuant to *Bankruptcy Rule* 12–43. The Defendant was on notice of the stay and injunction orders, and whether the contract was a security instrument or a lease agreement, the property rights of the Debtor were protected by the automatic stay of these Rules. The sale of the tractor during the pendency of these proceedings by the Defendant with knowledge thereof and without relief from the stay as required by the Rule was improper, and in violation thereof. The question of the entitlement of the Defendant to the tractor, and the right to sell the same was clearly within the jurisdiction of this Court, and the terms of which could have been properly determined upon proper Complaint filed herein pursuant to the Rules of Court. This was never done.

A mature review of the facts surrounding the contract demonstrates that the contract meets the requirements of a security instrument as defined by Section 8.1–201(37) of the *Code of Virginia*. In cases where the issue involves a lease option, each case must be determined upon its own facts.

■ A prime factor in determining whether a contract is a lease or a security instrument depends on whether equity is accumulated by the agreement, see *Re: Tillery* (5 Cir. 1978) 571 F.2d 1361, 23 UCC Rep.Ser. 1335. The contract in question resulted in equity being accumulated, in as much as the Debtor valued the tractor, following the agreement, at SEVEN THOUSAND and 00/100 DOLLARS ($7,000.00), while the balance due from rental and option payments was the sum of THREE THOUSAND FOUR HUNDRED TWENTY and 00/100 DOLLARS ($3,420.00). Additionally, it appeared from the testimony that the parties intended that the agreement be a security instrument, and indeed, the title at the top of the contract described it as an *"Option to Purchase"*.

---

1.  11–44. (a) *Stay of Actions and Lien Enforcement.*

    "A petition filed under Rule 11–6 or 11–7 shall operate as a stay of the commencement or the continuation of any court or other proceeding against the debtor, or the enforcement of any judgment against him, or of any act or the commencement or continuation of any court proceeding to enforce any lien against his property, or of any court proceeding, except as a case pending under Chapter X of the Act, for the purpose of the rehabilitation of the debtor or the liquidation of his estate."

    11–44. (b) *Duration of Stay.*
    "Except as it may be deemed annulled under subdivision (c) of this rule or may be terminated, annulled, modified, or conditioned by the bankruptcy court under subdivision (d), (e), or (f) of this rule, *the stay shall continue until the case is closed, dismissed, or converted to bankruptcy or the property subject to the lien is, with the approval of the court, abandoned or transferred.*" (emphasis added)

Having found that the contract was a security instrument, and unperfected, and further that the sale by the Defendant was improper, the only remaining issue is a determination of the indebtedness due and owing between the parties.

As previously stated, the evidence of both parties was woefully inadequate because of a lack of records, recollection, and any documentation of the transactions between the parties. The dealings between the parties, for the most part, was verbal, and out of the hip pocket of each; however, from the evidence presented, and having sifted through the same as best the evidence warrants, the Court finds and concludes that the following computation may be drawn therefrom.

| | |
|---|---:|
| Balance due on contract as of December 15, 1975 | $3,420.00 |
| Less amount paid by Plaintiff (85% credited to purchase per contract) | 1,870.00 |
| Balance due on contract | 1,550.00 |
| Add repair bill incurred by Defendant prior to sale | 2,119.88 |
| Total due the Defendant | 3,669.88 |
| Subtracted from sale price of $8,000.00 | 3,669.88 |
| Balance due Debtor | $4,330.12 |

Plaintiff asserted against the Defendant administrative charges during the summer of 1976, in the sum of NINE HUNDRED SEVEN and 15/100 DOLLARS ($907.15). The Defendant claimed against the Plaintiff countercharges of EIGHT HUNDRED NINETY–TWO and 34/100 DOLLARS ($892.34). These items being uncertain and inconclusive, are concluded to be mutually excluded and disallowed from computation.

To follow the provisions of the *Uniform Commercial Code of Virginia* relating to this liquidation without notice to or consent by the Debtor might result in a different standard of damages assessable; however, for this proceeding, the foregoing shall be the adjudged sum.

Serious questions might arise as to whether or not the Defendant could transfer title to this property in view of the injunctive orders of this Court and the stays invoked by *Rules* 11–44 and 12–43. This

Decision will attempt to put such questions at rest since the import hereof is to affirm the sale to the third party purchaser.

Judgment will be entered.