In re DUNN BROTHERS, INCORPORATED, Debtor.

LITTON INDUSTRIES CREDIT CORPORATION, Plaintiff,

v.

DUNN BROTHERS, INCORPORATED, Defendant.

DUNN BROTHERS, INCORPORATED, Plaintiff,

v.

LITTON INDUSTRIES CREDIT CORPORATION and The First National Exchange Bank of Va. and The Creditors' Committee, Defendant.

Bankruptcy No. 7–80–01372.
Adv. Nos. 7–81–0119, 7–81–0116.

United States Bankruptcy Court,
W. D. Virginia,
Roanoke Division.

Nov. 9, 1981.

William W. Terry, III, Roanoke, Va., for debtor.

Claude D. Carter, Roanoke, Va., for Creditors' Committee.

Douglas D. Wilson, Roanoke, Va., for Litton Industries Credit Corp.

Daniel F. Layman, Jr., Roanoke, Va., for First Nat. Exchange Bank of Va.

MEMORANDUM OPINION AND ORDER

H. CLYDE PEARSON, Bankruptcy Judge.

The issues in these adversary proceedings are whether an Equipment Lease Agree-

ment (Lease) between the parties is a true lease or a lease intended as a security agreement, and if the Lease is a lease intended as a security agreement, whether the lessor's security interest is properly perfected.

On May 11, 1979, the debtor, Dunn Brothers, Inc. (Dunn Brothers), entered into an Equipment Lease Agreement (the Lease) with the lessor Litton Industries Credit Corporation (Litton). The Lease provided that Litton as lessor leased to Dunn Brothers as lessee certain personal property described in subsequently attached equipment schedules. The parties agreed on a total of seven equipment schedules, each one covering a separate piece of equipment. Dunn Brothers filed its petition for relief under Chapter 11 of the Bankruptcy Reform Act of 1978 (the Code) on December 8, 1980. The debtor made all monthly payments on the equipment as required in the schedules through February, 1981. On April 9, 1981, Dunn Brothers filed its adversary proceeding seeking permission to sell free and clear of liens (A/P No. 7–81–0116). Litton filed its adversary proceeding for relief from the automatic stay on April 14, 1981 (A/P No. 7–81–0119). The proceedings were consolidated for hearing. Following the hearing, this Court ordered that the subject equipment be sold at public auction, and that the proceeds be held pending determination of the amounts, validity and priority of liens thereon.

The basic terms of the agreement between the parties are set out in the Lease, with specific details relating to each piece of equipment, including a description of the equipment, the lease length and payment terms, and any other special conditions, established in the respective equipment schedules. The lease provides that New York law shall apply in interpretation of all matters except filing and recordation of the document, which shall be governed by the law of the jurisdiction in which the equipment is located. In the Lease, the parties agree that the lessee will receive and maintain the equipment, bear the risk of loss and damage to or by the equipment, maintain insurance on the equipment, and pay all licenses, taxes, and fees, as required. Title to the equipment is expressly reserved in the lessor, and the lessee is to return the equipment to the lessor at the expiration or termination of the Lease. The overall agreements and covenants in the Lease make no mention of an option for the lessee to· purchase any equipment covered by the agreement.

Paragraph 18 of the Lease sets out the lessor's remedies upon default. The lessor's remedies include repossession and disposition of the equipment, retention of all payments made by the lessee, and enforcement of the remainder of the lease against the lessee. Paragraph 18(c) specifically states that all amounts retained by the lessor, including any sale proceeds that exceed the lessee's obligations, are to be retained by the lessor as liquidated damages for the breach of the Lease.

The terms of each equipment schedule differ, and some are modified by subsequent letters or agreements. Litton filed a financing statement for each equipment schedule with the Virginia State Corporation Commission. Each filed financing statement contains a disclaimer that filing is not to be construed as an admission that the lease to which it applies is intended as a security· agreement. Litton filed financing statements for equipment schedules numbered six and seven in the office of the Clerk of the Circuit Court of the City of Salem, Virginia, where the debtor has his place of business. Litton filed financing statements for equipment schedules numbered one through five in the office of the Clerk of the Circuit Court of Roanoke, Virginia.

The parties stipulated that Litton held a security interest in the equipment leased under schedules numbered six and seven, and that Litton's security interest was properly perfected. By order of this Court, with consent of the parties, the equipment covered by those schedules, or the proceeds therefrom, has been returned to Litton. The question remaining is whether Litton has a security interest in the five pieces of

equipment covered by schedules one through five and subsequent modifications of those schedules, and if so, if that interest is properly perfected.

The State of New York has enacted the Uniform Commercial Code (UCC). Under the UCC as enacted in New York, whether a lease is intended as a security agreement is a factual question. UCC § 1–201(37); *cf. Weiskotten v. Goforth Tractor, Inc.*, 1 B.R. 231, 233 (Bkrtcy.W.D.Va.1979) (interpreting identical provision of Virginia UCC). If any of the agreements are determined to be security agreements, the matter of proper filing to perfect an interest is governed by the Virginia UCC. *See* Va.Code § 8.9–401(1)(c) (Supp.1980).

■ Among the factors to be considered in determining if a lease is intended as a security agreement are the location of title to, or ownership rights in, the property; responsibility for maintenance, taxes, registration, etc.; placement of the risk of loss; and provision for disposition of the property at the termination of the agreement. In addition, the court must look at what the parties intended.

■ The reservation of title in the lessor is the essence of a lease agreement. *In re Wright Homes, Inc.*, 279 F.Supp. 598, 601 (M.D.N.C.1968). If the reservation of title is solely to secure payment of the depreciated value of the property, however, then the agreement creates a security interest. *In re Brothers Coach Corp.*, 9 U.C.C.R.S. 502, 504 (E.D.N.Y.1971). Assignment of such responsibilities as maintenance and taxes to the lessee seems to indicate that the lessee has some of the responsibilities of an owner. *See In re Wright Homes, Inc.*, 279 F.Supp. at 601. But none of these factors alone is determinative of the nature of the agreement. *Rish Equip. Co. v. Joe Necessary & Son, Inc.*, 475 F.Supp. 610, 615 (W.D.Va. 1979).

■ A provision requiring return of the leased property at the end of the term, does not negate the possibility of the agreement being a security agreement. 1 *Anderson on U.C.C.* § 1–201:14 (2d ed. 1979).

Furthermore, an option for the lessee to purchase the property under terms set forth in the lease does not automatically render a lease a security agreement. *Bill Swad Leasing Co. v. Stikes (In re Tillery)*, 571 F.2d 1361, 1366 (5th Cir. 1978); *In re Virginia Air Cond. Co., Inc.*, 11 U.C.C.R.S. 1260, 1263 (Bankr.W.D.Va.1972) (interpreting Virginia UCC). A lease with a provision for the lessee to become, or to have an option to become, the owner of the property at the end of the lease period for no additional consideration, or for a nominal consideration, is, however, a security agreement by statute. Va.Code § 8.1–201(37).

The definition of a "nominal consideration" may vary, but the best formula for determining whether a lessee may purchase leased property for a "nominal" sum has been described as the "economic realities" test. J. White & R. Summers, *Uniform Commercial Code*, § 22–3 at 881 (2d ed. 1980). If at the end of the term, the only economically sensible course for the lessee is to exercise the option to purchase the property, then the agreement is a security agreement. *Id.* That is, if the price to the lessee is much less than the fair market value of the property, then the lessor has recognized an equity in the lessee, and the lease was intended as a security instrument.

■ Whether the lessee acquires any ownership interest, benefit, or equity in the property is the pivotal issue in characterizing a lease purchase agreement. *Bill Swad Leasing Co. v. Stikes*, 571 F.2d at 1365; *Weiskotten v. Goforth Tractor, Inc.*, 1 B.R. at 233. Even if an agreement provides for surrender of the property to the lessor at the termination of the agreement, or on default of the lessee, it may still recognize an equity in the lessee. For instance, if the lessee is entitled to any surplus of proceeds after the lessor claims liquidated damages under the agreement, then the agreement recognizes an "equity" in the lessee. *In re Tillery*, 571 F.2d at 1365; *In re Brothers Coach Corp.*, 9 U.C.C.R.S. at 503.

■ There is no dispute concerning the equipment leased on schedules numbered

three, four, and five. At the time they executed the lease equipment schedules, the parties agreed that Litton would abandon all rights, title, and interest in the leased equipment to Dunn Brothers at the end of the lease, provided Dunn Brothers fulfilled the terms and conditions of the Lease. These leases are security agreements by statute. *See* Va.Code § 8.1–201(37).

The parties executed schedule number two on July 20, 1979. On October 22, 1979, the parties executed a "Purchase Agreement" concerning the equipment leased under schedule number two. According to the purchase agreement, Dunn Brothers agreed to buy and Litton agreed to sell the subject equipment for a price of $17,167.50, plus applicable taxes. By its terms, the purchase agreement superseded the Lease. The purchase agreement, an "exercised purchase option," appears to obligate the parties to a sale of the equipment, and to transform the lease agreement into a conditional sale.

The final equipment lease, that executed as schedule number one, was also modified by the parties. On the day the equipment schedule was executed, Litton signed a letter entitled "Purchase Option Letter," in which it granted Dunn Brothers the option to purchase the leased equipment for 10% of the original equipment cost, or $3,490.00. The purchase option letter stipulates that the parties agree that the sales price will be the estimated fair market value at the end of the 82-month term of the lease.

To characterize the lease in the case of equipment schedule number one, we must determine whether the price established by the "Purchase Option Letter" is a "nominal" price under the statute. Applying the "economic realities" test, it is clear that the parties intended that the equipment become the property of Dunn Brothers at the end of the Lease term. Over the term of the Lease, Dunn Brothers agreed to pay in excess of $52,000.00 in rental payments on a piece of equipment that was purchased for just under $34,000.00. At the hearing on this matter, the testimony established that the equipment had a useful life of ten to twenty years, and that its fair market value at the end of its useful life could be expected to equal its initial acquisition cost.

Given the continuing usefulness and value of the equipment, Dunn Brothers' only economically reasonable course would be to exercise its option to purchase the equipment at the end of the term of the Lease. It is clear that this is an option to purchase at a "nominal" cost. The lease agreement executed as equipment schedule number one is, therefore, a lease intended as a security agreement.

■ The remaining issue is whether the leases found to be security agreements, equipment schedules numbered one through five, are perfected under Virginia law. Virginia has a strict dual filing requirement for perfection of a security interest in equipment. *See* Va.Code § 8.9–401(1)(c) (Supp.1980). The only exception to the dual filing requirement is allowed in cases in which the debtor has more than one place of business in the state. *Id.*

Litton properly filed financing statements at the Virginia State Corporation Commission, but the second statement was filed in the County of Roanoke rather than the City of Salem. In Virginia, incorporated cities are political subdivisions separate and distinct from the counties within which they are physically located. Filing in the county was improper, and will not serve to perfect Litton's security interest. *See In re Mauck*, 378 F.Supp. 904, (W.D.Va.1974).

Litton argues that a second filing was excused under the Statute because Dunn Brothers' registered agent is in the City of Roanoke, and thus Dunn Brothers had more than one place of business in the state. Dunn Brothers' only place of business in Virginia is, and always has been, in the City of Salem. The location of the corporation's registered agent is not a place of business under the Virginia Code. *See Goldberg Co., Inc. v. County Green Ltd. Partnership*, 438 F.Supp. 693, 695–97 (W.D.Va.1977). The location of a registered agent outside of Salem will not excuse Litton's failure to file its financing statements in the appropriate place. Litton's security interest is, thus, unperfected.

The Virginia Code does contain a saving provision for perfection of security interests that are improperly filed. *See* Va.Code § 8.9–401(2). Under § 8.9–401(2), a filing made in good faith but in an improper place is held to be effective against any person who had knowledge of the contents of that financing statement. *Id.* Virginia's saving clause will not save Litton in this case, however, because under the Bankruptcy Code, the rights of a holder of an unperfected security interest are subordinate to the rights of the debtor in possession. The debtor in possession has, as of the commencement of the case the rights of a judgment lien creditor, without regard to any knowledge of the debtor in possession or of any creditor. 11 U.S.C. § 544(a).

In accordance with the findings and holdings in this Opinion, Dunn Brothers is granted a prior security interest in the proceeds of the sale of the subject equipment, and may use those funds accordingly. Further, Litton may file an unsecured claim for amounts due and owing under these contracts within twenty days from the date of this Order. It is so

ORDERED.