**In re Alan Leo DUPRAT, Susan Lavonne Duprat, Debtors.**

**Alan Leo DUPRAT, Susan Lavonne Duprat, Plaintiffs,**

**v.**

**William RUBLEE, Defendant.**

**Bankruptcy No. 82–00205.**
**Adv. No. 82–0202.**

United States Bankruptcy Court,
D. Vermont.

Feb. 15, 1983.

Gareth H. Caldbeck, Burlington, Vt., for debtors-plaintiffs.

Jonathan H. Stevens, Winooski, Vt., for defendant.

## MEMORANDUM AND ORDER

CHARLES J. MARRO, Bankruptcy Judge.

This adversary proceeding upon the Complaint of the Debtors to avoid a lien against a trailer filed December 30, 1982 came on for hearing after the filing of an Answer by the Defendant, William Rublee, with affirmative defenses and a counterclaim.

## FINDINGS OF FACT

The Debtors filed a Petition for Relief under Chapter 7 of the Bankruptcy Code on September 7, 1982. Prior to October 17, 1981 the Debtors had been residing in an apartment and on or about that date, the husband, Alan Leo Duprat, recovered a sum of money from a personal injury claim. They then decided to use some of the proceeds to purchase a residence and, since the amount was not sufficient to buy a house, they contacted the mobile home brokers for the purpose of buying a mobile home. William Rublee had listed his mobile home for sale with this agency known as Mobile Home Brokers.

Brenda Bartlett was the agent who negotiated the transaction and upon the payment by the Debtors of a deposit of $2,500.00, she prepared and had executed by the parties the following written instrument:

"October 17, 1981

"This lease-purchase agreement between William Rublee and Alan and Susan Duprat made on this 17th day of October, 1981, is applied to the purchase of a 1969 Mobile Home described as a Hillcrest located at Lot # 4, St. George Villa Mobile Home Park.

"A deposit of $2500.00, non-refundable, will be paid at signing, and a payment of $200.00 per month will be paid directly to Mr. Rublee from purchasers for a period of six months thereafter. At the end of the six month term, Mr. and Mrs. Duprat will pay the balance of $7800.00 for the Mobile Home to owner, Mr. Rublee. During the lease period, Mr. and Mrs. Duprat will be responsible for all repairs to the home and the park rent, taxes, and insurance. The purchasers may make any repairs or upgrading to the property at any time they wish.

"Mobile Home Brokers will not be held responsible for the home or any future problems arising during the lease-purchase period.

"October 17, 1981

"Addendum to Lease-Purchase Agreement

"At the time of sale, Mr. and Mrs. Duprat will be responsible for all costs at closing with an exception of the commission if the home is purchased through Mobile Home Brokers.

| " Alan L. Duprat/s/ | Wm. B. Rublee/s/ |
|---|---|
| Leasee Purchaser | Owner |
| " Susan L. Duprat/s/ | Brenda R. Bartlett/s/ |
| Leasee Purchaser | Witness |
| | Jeffrey E. Van Horne/s/ |
| | Witness" |

At the time that this instrument was executed the Debtors fully intended to purchase the trailer which is described in the instrument as a 1969 Mobile Home Hillcrest located at Lot No. 4, St. George Villa Mobile Home Park. They assumed that the deposit of $2,500.00 and $200.00 per month to be paid for six months were to be applied toward the purchase of the trailer and they had no intention of renting the trailer.

They entered into possession under the written agreement signed by them and made repairs and improvements to the property with William Rublee paying for the materials and the Debtors furnishing the labor with an estimated cost of $500.00.

When the agreement was executed Agent Bartlett received a commission of $500.00. Debtor Alan Leo Duprat had a ninth-grade education and was then employed as an apprentice plumber and his wife was a homemaker. He now has a permanent job at a salary of $128.00 a week and his wife earns $70.00 every two weeks taking care of children.

When the Debtors were negotiating for the purchase of the trailer they indicated to Agent Bartlett that they wanted one within a cost range of $10,000.00. They never discussed renting the trailer at any time before the execution of the written agreement.

The trailer was purchased by Rublee on December 24, 1979 for the sum of $7,776.00 and the total purchase price to be paid by the Debtors is $11,300.00.

## DISCUSSION

The written instrument described as a "lease-purchase agreement" was prepared by Agent Bartlett in behalf of the seller, William B. Rublee. She testified that it was intended as a lease with an option to purchase and that the $2,500.00 non-refundable deposit was to be retained by the seller as reimbursement for taking the trailer off the market.

The Court is satisfied that the Debtors never intended to lease the premises. Debtor Alan Leo Duprat was very emphatic in asserting as part of his testimony that there would be no purpose in renting the trailer when in fact they were leaving a rented apartment so that they could buy their own home. He testified that he would not be giving over $2,500.00 in the first place if he was just renting the place. The Court is convinced that his testimony is credible.

When the transaction was consummated the Debtors and Rublee shook hands and referred to the trailer as the new home of the Debtors.

It is apparent that the document signed by the parties is clearly ambiguous. Therefore, the intention of the parties must be determined from parol evidence; subject matter, the purposes sought to be accomplished, and the circumstances in which the parties contract, tending to throw light on their apparent intention at the time the instrument was executed. *Stratton v. Cartmell,* 114 Vt. 191, 194, 42 A.2d 419. Further, doubtful language in a contract should be construed most strongly against the party who framed and wrote it. *Manchester Marble Co. v. Rutland Ry Co.,* 100 Vt. 232, 242, 136 A. 394, 51 A.L.R. 628, 12 Am.Jur. Contracts, par. 252; *Stratton v. Cartmell,* supra.

In the instant case Rublee paid $7,776.00 for the trailer on December 24, 1979 and the total price in the agreement signed by the parties almost two years later on October 17, 1981 is $11,300.00. It is obvious that during this two-year period the trailer depreciated in value as evidenced by the repairs and improvements necessary and performed by the Debtors after they took possession. Even without supporting testimony the only fair conclusion is that a sale of the trailer was intended with the seller reserving a lien for the balance of the purchase price. The instrument itself provides that Duprat, the debtor, is responsible for all repairs, park rent, taxes and insurance. These ordinarily are the responsibility of an owner and they are factors which are usually considered in making a determination as to whether a lease or a security agreement is intended. See *In Re Dunn, Inc.* (Bkrtcy.W.D.Va.1981) 16 B.R. 42, 45 as follows:

"Among the factors to be considered in determining if a lease is intended as a security agreement are the location of title to, or ownership rights in, the property; responsibility for maintenance, taxes, registration, etc.; placement of the risk of loss; and provision for disposition of the property at the termination of the agreement. In addition, the court must look at what the parties intended."

Also at page 45 the Court said:

"Assignment of such responsibilities as maintenance and taxes to the lessee seems to indicate that the lessee has some of the responsibilities of an owner. See *In re Wright Homes, Inc.,* 279 F.Supp. [598] at 601. But none of these factors alone is determinative of the nature of the agreement. *Rish Equip. Co. v. Joe Necessary & Son, Inc.,* 475 F.Supp. 610, 615 (W.D.Va.1979)."

The Court is aware of the distinction between a true lease and a security interest

or equitable mortgage. *In Re Mountain Carpet, Inc.* (Bkrtcy.1979) 11 B.R. 729; *In Re Kors, Inc.,* (Bkrtcy.1981), 5 CBC 2d 872, 13 B.R. 683 affirmed by U.S. District Court (D.Vt.) slip opinion—Chief Judge James S. Holden, June 18, 1982.

Upon the testimony adduced at the hearing, the circumstances surrounding the execution of the agreement signed by the parties, and the purposes sought to be accomplished, this Court concludes that the so-called lease-purchase agreement is a contract for the sale and purchase of the trailer with a lien reserved to the seller for the balance of the purchase price and not, as claimed by Rublee, a lease with the option of purchase.

The Debtors, in their petition to avoid the lien of the seller, rely on *In Re Williams* (Bkrtcy.D.Kan.1981) 9 B.R. 228 in which the Bankruptcy Court held that a lien does not survive the discharge. In the instant case a discharge has been granted to the Debtors but the Court does not agree with the holding in Williams. A discharge merely excuses a debtor from the payment of dischargeable debts. It has no effect on a lien legally acquired by a creditor against the debtor's property. The Williams decision has been criticized and Bankruptcy Courts have held to the contrary. This Court agrees with the rationale expressed in the recent case of *In Re Cassi* (Bkrtcy.N. D.Ind.1982) 24 B.R. 619 in which the Court held that a valid, prefiled lien which had not been avoided during the bankruptcy proceedings is not extinguished by the discharge of the debtors and remains enforceable in rem after the discharge even if there is no approved reaffirmation agreement. It follows that the lien of Rublee against the trailer subsists.

## ORDER

Upon the foregoing,

IT IS ORDERED as follows:

1. The "lease-purchase agreement" signed by the parties October 17, 1981 is construed as a purchase and sale contract with a lien against the trailer reserved to seller Rublee.

2. The Petition of the Debtors to avoid the lien is DENIED.