In re WALDOFF'S, INC., Debtor.

WALDOFF'S, INC., Plaintiff,

v.

ORIX CREDIT ALLIANCE, INC., Defendant.

Bankruptcy No. 9009166 HEG.
Adv. No. 910808 HEG.

United States Bankruptcy Court, S.D. Mississippi.

Aug. 27, 1991.

**326**

Robert A. Byrd, Biloxi, Barton Nachamie, New York City, for plaintiff.

T. Calvin Wells, Peter L. Doran, Jackson, Miss., for defendant.

## OPINION

EDWARD R. GAINES, Bankruptcy Judge.

Before the Court for consideration is the adversary complaint filed by Waldoff's, Inc. against Orix Credit Alliance, Inc., requesting determination of the validity, priority or extent of a lien or other interest in property, and to obtain a declaratory judgment that the subject agreement between the parties is a financing arrangement and that the Defendant is a general unsecured creditor. Also before the Court is the counterclaim by Orix requesting a declaratory judgment that the transaction consti-

tutes a true lease and requesting the Court to compel the debtor to assume or reject the lease, and the motion for relief from stay or for adequate protection filed by Orix. After review of the issues presented in the pleadings and briefs, and consideration of the testimony at trial, the Court concludes that the agreement between the debtor, Waldoff's, Inc. and Orix Credit Alliance, is a security financing agreement and not a lease, and that Orix is secured only to the extent of the value of the collateral.

## I. FACTS [1]

1. Waldoff's, Inc., is a retail merchandiser of men's, ladies' and children's clothing. The business is located in the Cloverleaf Mall in Hattiesburg, Mississippi.

2. An agreement was reached between Waldoff's and the landlord of the shopping mall for Waldoff's to move into one of the "anchor" spaces and expanding its store area. Waldoff's began making arrangements for financing the expansion and design of the area because the space provided by the landlord was only a shell and did not have a finished interior.

3. Arrangements were made with Balboa Funding Group, Inc. ("BFG") to provide financing of up to $1.8 million for the expansion project. For a period of over a year the debtor underwent construction and completion of the project.

4. On November 28, 1989, after the store opening, Waldoff's, Inc. and BFG entered an agreement entitled "Master Lease Agreement", which provided the means by which Waldoff's purchased and financed the acquisition of fixtures and equipment previously selected or ordered by Waldoff's. BFG does not engage in the business of the manufacture or sale of equipment and fixtures, but rather equipment financing.

5. Prior to entering the Lease Agreement, the Board of Directors of Waldoff's passed a corporate resolution authorizing

1. Portions of these findings and conclusions are taken from pleadings and briefs submitted by the parties.

the appropriate corporate officers to enter into such agreements on Waldoff's behalf.

6. Under the Lease Agreement the terms "Lessor" and "Lessee" are used throughout to identify the parties. Other terms typical of lease transactions are found throughout the agreement such as "rent" and "term". Waldoff's agreed to a lease term of 60 months and a monthly rent of $4,451.72. The lessor retains title to the property. Lessor's remedies upon default allow the lessor to recover the residual value of the equipment in addition to rent. The lease provides that upon expiration of the lease term the lessee will deliver the equipment, at its own expense, to the lessor unless the lessee shall have duly exercised any purchase option.[2]

7. Additionally, UCC Financing Statements were executed by the parties and filed by BFG. BFG has the rights of a secured party. Waldoff's also bears the risk of loss and is responsible for repairs and replacing equipment and parts. The equipment is not under warranty as to merchantability or fitness for any particular purpose. Waldoff's incurs the expenses of taxes, insurance, license and registration fees, import duties and other charges incidental to ownership, leasing, renting, sale, possession or use of the equipment. At the time the agreement was executed the equipment had already been selected by Waldoff's. The equipment was shipped or delivered from the manufacturers or vendors directly to Waldoff's.

8. Although Waldoff's accountant initially treated the agreement as a lease for tax purposes, the subsequent and current accountant filed amended returns and treated the agreement as a financing transaction.

9. On November 29, 1989, Balboa Funding Group, Inc. assigned its rights under the Lease Agreement between Balboa and Waldoff's to Orix Credit Alliance, Inc. by a Nonrecourse Lease Assignment.[3] Under the terms of the assignment, Orix assumed Balboa's rights in the underlying lease.

10. Collateral included in the assignment to Orix included office furniture, mahogany and walnut desks, oak tables, telephones, sofas, chairs, a Steinway grand piano and various other items.[4]

11. On October 3, 1990, after experiencing a slow down in the local economy and financial difficulties, Waldoff's, Inc., filed in this court a petition for relief under Chapter 11 of Title 11 of the United States Code. Waldoff's continues to operate its business and manage its property as a debtor-in-possession under Section 1107 and 1108 of the Bankruptcy Code.

12. On January 22, 1991, Waldoff's filed this adversary proceeding requesting the Court to determine that the agreement be deemed a security financing agreement and that Orix is secured only to the extent of the value of the collateral and is a general unsecured creditor to the extent of the balance of its claim. Orix filed its counterclaim against Waldoff's stating that the lessor maintains exclusive ownership of the leased property; the lessee undertook an absolute obligation to return the leased property at the end of the lease term; the lessee acquired no equity; and the lease contains no option to purchase. Orix requests a declaratory judgment that the underlying transaction constitutes a true lease and an order compelling the debtor to assume or reject within a reasonable time.

## II.  CONCLUSIONS

The matter before the Court is a core proceeding under 28 U.S.C. § 157(b). This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334.

---

**2.** Evidence on whether or not there existed an option to purchase is not considered here. Objections were raised as to admissibility of evidence relating to an option to purchase. Without deciding those issues, the Court feels there is enough evidence otherwise to support a finding that the agreement was a security financing arrangement.

**3.** Orix was one of several assignees to which the agreement was parceled out.

**4.** The overall financing transaction with Balboa included an entire spectrum of furniture, fixtures and equipment necessary to construct the retail store including materials and "soft costs" of installation.

Under UCC Section 1–201(37), whether a transaction qualifies as a security agreement must be determined from the intent of the parties. This is the same general rule of contract interpretation as has been applied under the common law of Mississippi for several years. *UHS–Qualicare, Inc. v. Gulf Coast Community Hospital, Inc.*, 525 So.2d 746 (Miss.1987). Whether or not an agreement is considered a lease or a security agreement will determine the type of treatment that may be given to the holder of the claim under the Bankruptcy Code. A lease must be either assumed or rejected as specifically provided under 11 U.S.C. § 365. A creditor's secured claim may be subject to a modified treatment under a plan of reorganization.

Courts have considered various factors in determining the true intent of the parties as to whether a lease constituted a financing arrangement or disguised security agreement. They include the following: (1) direct shipment of equipment to the purchaser/lessee; (2) lessor would remit the full sales price plus sales tax to the manufacturer; (3) the purchaser/lessee had often placed purchase orders with the manufacturer prior to approaching lessor for financing; (4) lessor did not select or inspect any of the equipment; (5) lessee was given options to purchase the equipment for nominal sums; (6) UCC Financing Statements were executed and delivered to the lessee and filed by the lessor; (7) the agreements were almost always discounted with a bank or other lending institution; (8) the monthly payments under the lease were calculated to return to the lessor the purchase price, sales tax, interest and filing fees; (9) lessor did not maintain a warehouse for the storage of machinery and equipment; (10) lessor did not carry the leased property as assets on its books but rather as accounts receivable; (11) lessee bore the risk of loss or damage to the equipment; (12) title or ownership rights; (13) accumulation of equity; (14) provision for disposition of property at termination of agreement. *See, In re Sherwood Diversified Services, Inc.*, 382 F.Supp. 1359 (S.D.N.Y.1974); *In re Pacific Express, Inc.*, 780 F.2d 1482 (9th Cir.1986); *In re*

*Pacific Sunwest Printing*, 6 B.R. 408 (Bankr.S.D.Cal.1980); *In re Dunn Brothers, Inc.*, 16 B.R. 42 (Bankr.W.D.Va.1981); Annotation, *Equipment Leases as Security Interest Within Uniform Commercial Code § 1–201(37)*, 76 A.L.R.3d 11 (1977).

As pointed out in arguments presented on behalf of the debtor, the agreement as assigned to Orix from BFG cannot be looked at in a vacuum but must be considered as part of an overall transaction that involved BFG and the debtor. Orix was not a party to this transaction. The Court must consider the intent of the parties to the transaction, and any subsequent intent of Orix at the time of the assignment from BFG is irrelevant in this determination. In weighing the evidence to determine intent, the Court has included the following points in an overall assessment of the circumstances surrounding this agreement.

Waldoff's primary goal in acquiring funds from Balboa Funding Group was to finance the expansion of its store into a new location which included complete outfitting of a building shell into a retail store ready for business. The expansion cost estimate of $1.8 million was to include built-in cabinets, fixtures, wall coverings, carpet, furniture, fixtures and other items, as well as the soft costs of installation. The expansion took place over a period of approximately 1½ years prior to the date of the execution of the actual "Lease Agreement" and after the store was actually opened. This is not consistent with a lease. Although some items would admittedly retain value for a lessor at the end of the lease term, the items as considered in the overall lease transaction would have little value.

Orix does not manufacture or sell the items subject to the lease document. Waldoff's had the obligation to pay insurance, taxes, maintenance, and to bear the risk of loss.

Expert testimony presented indicated that the proper way to treat this particular transaction in accordance with the Ameri-

can Institute of Certified Public Accountants was as a financing transaction.

Although the intent of Orix is not to be considered here since it was not an original party to the agreement, it is interesting that at the time Orix entered the assignment with BFG, it was obviously aware that there was a larger overall transaction because Orix was able to choose the items it wanted as collateral and actually rejected some of the items. Milton Waldoff was not in the business of reviewing such agreements and had never had a transaction of this scope or magnitude, whereas BFG was in the business of financing such arrangements.

The Court also weighed evidence and arguments by Orix that Waldoff's wanted off balance sheet financing, and Waldoff's chose a lease with lower payments rather than a secured financing agreement. Orix also argued that they negotiated with the understanding that this property was going to come back to them at the end of the agreement and that the collateral had a definite value left at the end of the term, that value being approximately $85,000.00, and that the change in tax treatment by the debtor's CPA was the only way to save the company and that Waldoff's had no choice.

Additionally, the Court notes and considers the debtor's arguments that the payments under the agreement were not low, but were at a high rate of interest; that a collateral value of $85,000 is nominal when considering the $1.1 million overall transaction with BFG; and that the Court should not consider what Orix negotiated with BFG since the transaction was between BFG and Waldoff's.

Although many indicia of a normal and ordinary lease exist here, when all factors are considered together, this Court is compelled to conclude that Waldoff's and BFG entered this agreement to finance the acquisition of material necessary to complete a retail store. The nature of the transaction and the type of collateral support the Court's conclusion. The materials were generally ordered by the debtor over a period of time long prior to the actual agreement date. Although the materials included many items that could typically be included in a true lease, those items were not originally made the subject of a separate lease agreement but were included in an overall agreement along with soft costs of construction and many unreturnable items.

Based on the overall circumstances surrounding this transaction, the Court finds that the Master Lease Agreement executed between Waldoff's, Inc. and Balboa Funding Group, Inc., is a financing arrangement and not a lease. Orix is a secured creditor, based upon its filing of UCC Financing Statements, to the extent of the value of its collateral.[5] The motion by Orix to compel the debtor to assume or reject is rendered moot by the Court's decision herein. The motion to lift stay filed by Orix will be set by the Court for a status conference to determine further proceedings.

These findings and conclusions are made pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52.

A separate judgment shall be entered consistent with these findings of fact and conclusions of law pursuant to Rule 58 of the Federal Rules of Civil Procedure and Bankruptcy Rule 9021.

---

**5.** Values as presented to the court for purposes of this hearing will not be considered binding on the creditor at this point for purposes of valuation of its secured claim under 11 U.S.C. § 506.